### Mitchell v. Zimmerman.

The charge of the court must be considered with reference to the issue and the evidence, and the words employed must be taken in their ordinary and popular acceptation.

Where a party intentionally misrepresents a material fact or produces a false impression by words or acts, in order to mislead or to obtain an undue advantage, it is a case of manifest fraud.

It is a rule in equity that all the material facts must be known to both parties to render the agreement just and fair.

If there be any intentional misrepresentation or concealment of material facts in the making of a contract, in cases in which the parties have not equal access to the means of information, it will vitiate and avoid the contract; and it is immaterial whether the misrepresentation or concealment be made on the sale of real or personal property, or whether it relates to the title to land or some collateral thing attached to it. (Note 15.)

Whether a party who misrepresents a fact about which he is supposed to have peculiar information knows it to be false, or makes the assertion without knowing whether it be true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false.

The rule of *caveat emptor* does not apply where one party to the contract enters into it by reason of the false and fraudulent representations of the other, who is supposed to possess superior means of information.

The owner of an estate is supposed to be peculiarly cognizant of the quantity and quality of it; and a person coming to purchase or lease naturally and properly looks to him for information, and has a right to expect the truth. (Note 16.)

Every person reposes at his peril in the *opinion* of others when he has equal opportunity to form and exercise a correct judgment of his own.

Where a contract of lease was vitiated by the fraud of the lessor: *Held*, That the lessee had his election either to abandon the lease entirely or to hold on for the term at what the premises were reasonably worth. (Note 17.)

Where defendant " did not admit the justice of the claim, but said he would rather pay than "go to law, and after making the last payment which he did make, asked further time on "the balance:" *Held*, That he was not estopped from showing that nothing was due.

Where a misrepresentation as to quantity is made by the vendor, though innocently, the right of the vendee is to have what the vendor can convey, with an abatement of the purchase-money for so much as the quantity falls short of the representation.

Appeal from Washington. The appellant sued the appellee upon an agreement in writing for the payment of $225, [**76**] alleged to be in consideration of the rent of a farm for the year ending on the 1st of January, 1849.

The agreement is appended to the petition and has indorsed upon it two receipts: one for $45, dated December 12, 1848; the other for $57, dated January 31, 1849.

At the Fall Term, 1849, the defendant answered, admitting the contract as alleged, but averring that he was induced to make it by the false and fraudulent representations of the plaintiff that there were in said farm at least one hundred and forty acres of land in a good condition for cultivation, when in truth there were less than fifty acres in that condition. The answer further alleges a partial failure of consideration in terms, and concludes with a general denial.

At the trial it was proved that previous to the contract the plaintiff and defendant were upon the premises, and that the former represented that there were one hundred and forty acres in a good condition for cultivation. The defendant saw the place, but did not go much over it. Afterwards the parties met, and, after some conversation about the place, entered into the written contract. The proof as to the amount of land in the rented farm in a good condition for cultivation varied from forty-seven to sixty acres. The witness testified that there appeared to be about fifty or sixty acres of the land in a good condition for cultivation, but that upon actual measurement there were found to be but forty-seven and four-tenths acres. It was further in proof that the defendant ascertained the deficiency in the land shortly after he moved upon the premises, but that he did not then leave the premises, for the reason that he was a stranger in the country, and could not rent another place. The defendant proved the payment of the two amounts of $45 and $57 credited upon the contract; that one of the payments was made after the expiration of the lease; that the defendant complained of the plaintiff, and said he had been

## Mitchell v. Zimmerman.

advised not to pay the rent; did not admit the justice of the claim, but said he would pay rather than go to law; and after making the last payment [77] mentioned, asked further time on the balance stipulated in the contract. The court instructed the jury that "if they believed from the evidence that the "plaintiff, in making the contract with the defendant, had deceived and over-"reached him, they would then find for the plaintiff what the rented premises "were reasonably worth; but if they believed that there was no fraud on the "part of the plaintiff, then they would give him the full benefit of his contract, "and find for the plaintiff what appeared to be justly due him."

There was a verdict and judgment thereon for the defendant; motion for a new trial overruled; plaintiff appealed.

*Lewis* and *Rivers*, for appellant. This action was commenced by the appellant, who was plaintiff in the court below, on an instrument which forms a part of the record in this cause and is admitted in the defendant's answer and was executed by the defendant and one Cook, (who is not a party.) The plaintiff stipulates to rent his farm, pasture, peach-orchard, dwelling-houses, &c., till the first day of January, 1849, expressly refusing to "warrant or guarantee anything but the possession till 1st January, 1849." It is in proof that the defendant saw the place before he rented, but did not go much over it. Then, as to the quantity, it was a mere matter of opinion. The defendant had a chance to form his opinion, for he saw the place. And, from the testimony, there was other land that had been cultivated, (as the plaintiff had represented.) So whether this was fit for cultivation seems to be a matter of opinion, and the defendant had a chance to judge. So of the fence. The defendant did not pretend or prove that he suffered in consequence of the failure in quantity or quality of land or the defects in the fence. Defects that can be seen as well by the vendee as vendor constitute no defense. There is not sufficient showing to defeat the written contract. (1 Law Lib., 182, 183.) At any rate, when the defendant found the deficiency and defects, he was bound to offer to rescind the contract; not to hold on and then plead it [78] in defense. After the money had become due, the defendant agreed to pay and asked and obtained indulgence. These latter promises bind him. So the finding of the jury was contrary to law and evidence; the charge of the court erroneous and calculated to mislead and present an immaterial issue.

*Gillespie*, for appellee.

I. There is no error in the charge of the judge. If the defendant had been overreached by the representations of the plaintiff below, surely the contract ought not to be enforced. The verdict was justified by the evidence. Mitchell owned and lived on the place, and certainly knew the amount of tillable land and the situation for cultivation. The defendant below was a stranger; had not seen much of the plantation; examined it but imperfectly; trusted to the representations of the other, and was badly deceived. The testimony all tended that way. Will the fact of his remaining on the land and cultivating all that was tillable bind him for the whole? Surely not; but he would only be responsible for what the tillable land was worth. He paid that, and more than its just proportion.

II. Is there anything in what he said or did after the rent was due to bind him for the whole? He never admitted the justice of the claim; all the time spoke of the bad conduct of the plaintiff below in the affair; but, being a stranger, concluded at one time it would be better to pay all than to contest the matter. That would not bind him to pay an unjust claim.

WHEELER, J. It is insisted, on behalf of the appellant, that the court erred in the instruction to the jury, and that the verdict was not warranted by the evidence.

The instruction given must be understood in reference to the issue and evidence in the case. The defense relied on was the fraudulent misrepresentation

## Mitchell v. Zimmerman.

of the plaintiff in respect to the quantity of land within the rented premises in a good condition for cultivation. The issue was as to this alleged [79] fraud and deception, and to this point the evidence was directed. The charge, then, must be understood as having had an especial and direct reference to this issue and the evidence respecting it. The words employed must be taken in their ordinary and popular acceptation. And, thus understood, the instruction was, in effect, that if the plaintiff had induced the defendant to enter into the contract by fraudulent misrepresentations, by which the latter had been deceived to his prejudice, the plaintiff was entitled to recover only the actual value of the rented premises; otherwise he was entitled to recover the full amount contracted for, less the payments previously made. This instruction, as applied to the case in evidence, was, it is conceived, correct. If the party, says Story, intentionally misrepresents a material fact or produces a false impression by words or acts, in order to mislead or obtain an undue advantage, it is a case of manifest fraud. (1 Story Eq., sec. 192.) It is a rule in equity that all the material facts must be known to both parties to render the agreement just and fair in all its parts. (2 Kent Com., 491.) And if there be any intentional misrepresentation or concealment of material facts in the making of a contract, in cases in which the parties have not equal access to the means of information, it will vitiate and avoid the contract. (2 Kent Com., 482 ; 2 Bail. R., 324.) It is immaterial whether the misrepresentation be made on the sale of real or personal property, or whether it relates to the title to land or some collateral thing attached to it. (7 Wend. R., 380.)

That there was in this case a gross and palpable misrepresentation and deception intentionally practiced upon the defendant by the plaintiff in a most material fact seems scarcely to admit of a doubt. The plaintiff assumed to know, and stated the facts to be, that there were of the premises one hundred and forty acres of land in a good condition for cultivation ; whereas the fact was that there were not fifty acres in that condition. But whether the party thus misrepresenting the fact knew it to be false, or made the assertion without [80] knowing whether it was true or false, is wholly immaterial ; for it has been justly said the affirmation of what one does not know or believe to be true is equally, in morals and laws, as unjustifiable as the affirmation of what is known to be positively false. (1 Story Eq., sec. 193 ; 9 Ves. R., 21.) The present, therefore, seems to have been a case of manifest, positive fraud on the part of the plaintiff of a character to vitiate and avoid the contract.

It cannot with justice be said that the parties' had equal means of information respecting the facts, and that therefore the maxim of *caveat emptor* ought to apply. Their means of information cannot be said to have been equal. And that rule does not apply where one party to the contract entered into it by reason of the false and fraudulent representations of another, who is supposed to possess superior means of information. (6 Shep. R., 418.) A false representation relating to the value of an estate, the knowledge of which is usually confined to the owner and those standing in confidential relations does not come within the rule that the party making it is not responsible to one deceived by it, by reason of its being a matter which is or should be equally well known to both parties. (Ib.) And a lessee, it has been held, cannot be considered as having waived such defense to an action on the lease from the mere fact that he had been upon the premises before the lease was executed. (Ib.) The owner of the premises must be supposed to be peculiarly cognizant of the fact of the quantity of land fit for cultivation, which he undertook to state, and which a stranger coming to lease the premises is not supposed to know. It was both natural and proper for the latter to look to the former for information, and he had a right to expect the truth. Nothing less could accord with the plainest dictates of honesty and fair dealing, or could comport with the duty of the plaintiff in morals and law. The representation was in a matter respecting which the defendant is not supposed to have been equally with the plaintiff acquainted with the facts ; and it was made in a manner so positive and [81] definite as naturally to induce the former to forbear

## Mitchell v. Zimmerman.

using the means of information which for his own security he might otherwise have employed. And these are the circumstances which render the misrepresentations of a character to avoid the contract. (1 Story Eq., secs. 198, 199; 2 Kent Com., 487.)

It is indeed true that every person reposes at his peril in the opinion of others when he has equal opportunity to form and exercise a correct judgment of his own; but that is not the case of the present defendant. If, says Sugden, an estate be represented as containing a given quantity, although not professedly sold by the acre, the circumstance that the purchaser was intimately acquainted with the estate would not necessarily imply knowledge of its exact contents, while a particular statement of the quantity would naturally convey the notion of actual admeasurement; and therefore the court would not be warranted in inferring that the purchaser knew the real quantity. (Sug. V., 293, 294.) And, *a fortiori*, this would be the case where the purchaser was wholly unacquainted with the premises.

Upon the discovery of the fraud, it doubtless was competent for the defendant to have abandoned or restored the premises to the plaintiff, and thereby wholly to have avoided the contract. But as it appears that he could not have done so without inconvenience and injury, and could not have been restored to his original condition before making the contract, it was not, as we conceive, necessary for him to have done this to enable him to resist the payment of so much of the price stipulated for the premises as the quantity fell short of the representation. (5 Shep. R., 329; 9 Johns. R., 465.) The rule is stated to be that if an estate be sold at so much per acre, and there is a deficiency in the number conveyed, the purchaser will be entitled to compensation. (Sug. V., 291.) And the rule is the same, says Sugden, though the land is neither bought nor sold professedly by the acre. The presumption is that in fixing the price regard was had on both sides to the quantity which both supposed the estate to consist of. The [82] demand of the vendor and the offer of the purchaser are supposed to be influenced in an equal degree by the quantity which both believed to be the subject of their bargain. The general rule, therefore, is that when a misrepresentation is made as to the quantity, though innocently, the right of the purchaser is to have what the vendor can convey, with an abatement out of the purchase-money for so much as the quantity falls short of the representation. (Ib.) And surely the right of the vendee or lessee will not be prejudiced by the fact that the representation was not innocently but intentionally and fraudulently made. It is a very old head of equity, said Lord Eldon, (6 Ves. R., 182,) that if a representation be made to another person going to deal in a matter of interest, the former must make the representation good if he knew it to be false.

It appears to have been optional with the defendant whether he would at once abandon and avoid the contract altogether or remain upon and cultivate the land actually conveyed, and have an abatement of the price *pro tanto* the deficiency. (Ib.; 2 Hen. & Munf., 173, n.; 1 Call R., 301; 4 Munf. R., 332; 1 Des. R., 433; 2 Rep. Const. Ct., 100.) The right of the defendant, therefore, to his defense was not waived nor lost by his omission to restore the premises. Nor is it conceived to have been affected by his subsequent promises of payment, since those promises were accompanied with protestations against the justice of the claim, and appear to have been induced by the fear of litigation. The defendant had already paid more than the proportionate value of the quantity of land found to be in good condition for cultivation, and upon no principle of equity or justice could more be required of him. The plaintiff had no right to demand more, and any promise which the defendant may have made after the contract had been in equity executed, and his liability under it extinguished, was without consideration, a mere *nudum pactum*, not obligatory upon him. (2 Bl. Com., 448.)

The instruction given by the court, as a legal proposition, [83] was more favorable to the appellant than he could have required; for it asserts that if there was no fraud on the part of the plaintiff, he was entitled to the full

amount stipulated in the contract; whereas, had the misrepresentation been innocently made, as we have seen, still the defendant would have been entitled to an abatement of the price for so much as the actual quantity fell short of the representation. But this is not an error of which the appellant can complain.

The defense relied on appears to have been a valid defense to the action, and the verdict to have been fully supported by the evidence; and we are of opinion, therefore, that the judgment be affirmed.

Judgment affirmed.

NOTE 15.—York v. Gregg, 9 T., 85; Hays v. Bonner, 14 T., 629; Littlefield v. Tinsley, 22 T., 259; Rhode v. Alley, 27 T., 443; Copeland v. Gorman, 19 T., 253. An estate will not be permitted to derive unjust advantage from the fraudulent conduct of the administrator. (Able v. Chandler, 12 T., 88; Crayton v. Munger, 9 T., 285; Hawpe v. Smith, 25 T. Supp., 448; Roehl v. Pleasants, 31 T., 45.) Where the representation of the administrator is but the honest expression of his opinion upon facts equally well known to the purchaser, the rule of *caveat emptor* applies. (Walton v. Reager, 20 T., 103.) The acts and representations of the wife, in respect to her rights of property, made to deceive and which do deceive others to their injury, will be binding upon her, and she will be precluded from asserting her claim as against those who have confided in and acted upon her representations and admissions, or who have been deceived to their prejudice by her fraudulent acts. (O'Brien v. Hilburn, 9 T., 297; Holliman v. Smith, 39 T., 357; see Cross v. Everts, 28 T., 523; Fitzgerald v. Turner, 43 T., 79.)

NOTE 16.—Smith v. Fly, 24 T., 345. As to the rule where there is an excess or deficiency of land in boundaries sold, see Smith v. Fly, 24 T., 345; O'Connell v. Duke, 29 T., 299; Farenholt v. Perry, 29 T., 316; Ladd v. Pleasants, 39 T., 415.

NOTE 17.—Walling v. Kennard, 10 T., 508; Copeland v. Gorman, 19 T., 253.