Statement of the case.

## No. 5770.

### KATE J. EDWARDS ET AL. *v.* MARY A. SMITH ET AL.

1. DESCRIPTION IN TRESPASS TO TRY TITLE.—A petition for "all of lot number five, in division E, in the government tract adjoining the city of Austin, and patented to H. Aikin, assignee of S. G. Sneed, on the seventh day of July, 1851, patent No. 193, volume 2, as will more fully appear by reference to the plan of said tract on file in the general land office of Texas," is not bad for want of sufficient description of the land sued for.

2. COPIES FROM COMPTROLLER'S OFFICE.—The certificate of the Comptroller from the records of his office are admissible in evidence where the area of adjoining lots may become material to aid in determining the division line between them.

3. BOUNDARY LINE—AGREEMENT.—Owners of adjoining lands, agreeing upon and fixing a common boundary line, are bound thereby, although the agreement is not in writing.

4. CHARGE.—A charge as to such parol agreement authorized by the testimony was proper, and any exception in favor of an innocent purchaser should have been asked.

5. VERDICT—JUDGMENT.—A general verdict in trespass to try title for the plaintiff only supports a judgment for the land described in the petition.

6. PRACTICE IN BOUNDARY SUITS.—In boundary suits, the petition should set out the land in dispute by metes and bounds, as otherwise the verdict should describe the land found by the jury.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

This was a suit of trespass to try title, brought in the district court of Travis county, on the fourteenth day of November, 1884, by appellees against Francis T., Alf. R., Joseph R. and W. C. Burlage, Kate J. Edwards, Joseph Fisher, George Holdstock and Robert G. Sheldon, to recover lot five in division E in the government tract adjoining the city of Austin. The Burlages and Kate J. Edwards answered by pleading not guilty and the three, five and ten years statutes of limitation.

The defendants Fisher, Holdstock and Sheldon, answered by filing a general and special demurrer, a plea of not guilty, the three, five and ten years statutes of limitation, and each filed a plea of improvements in good faith.

The charge of the court is given, so far as noticed, in opinion: This action is brought for lot five, division E, of Austin city out lots. The defendants claim under patentee of lot four, division E. The two lots are adjoining and have a common line dividing them. There is no issue of title in the case save as will be determined by ascertaining the locality of the land in controversy with reference to the division line between the said lots. If the land is on lot four, defendants recover, and if on lot five, plaintiffs recover.

The land in controversy is a narrow strip of about two hundred and two feet width, one end bounded by West Avenue and extended at right angles to West Avenue and from it to Shoal creek. Defendants claim that the north line of lot four, and consequently the south line of lot five is a production west of the north line of Mesquite street to Shoal creek. The plaintiffs claim the land to be where an old fence was built prior to 1855, and claimed to be south of the lots claimed by defendants Fisher, Holdstock and Sheldon, and about two hundred and two feet south of the line claimed by defendants as the line of said lots four and five.

If the owners of said lots at any time mutually agreed upon and adopted a line between said lots 4 and 5, and built a fence upon such agreed division line, or agreed upon a fence already built, then such agreed line would be binding upon the parties making such line and upon those holding by purchase under them. Such agreement, however, must be between the owners of the adjoining tracts.

"2. In the absence of, or if such agreed line be not shown by the testimony then the jury will, from the testimony before them, ascertain where the true line between said lots is situated.

"3. If the jury find from the testimony that in 1855, or prior thereto, the lot 4 was owned by John Hampton and lot 5 was owned by his brother, Joseph Hampton, and that while so owning the said lots the said owners agreed upon and adopted a division line between said lots, or if said John Hampton, while owning said lot 4, and Mary A. Hawkins (now Mrs. Smith) while owning lot 5, agreed upon or adopted a division line, and that they built and kept up a fence upon such adopted division line, as against the parties to this suit is conclusive, and if the said fence upon such division line be (situated) south

of the lots held by the defendants then the jury will find for the plaintiffs.

"4. If there be no such agreed division line shown by the testimony then the jury will, from the testimony, ascertain the true locality of the division line between said lots 4 and 5, and if said line be the production west of the upper line of Mesquite street then the jury will find for the defendants.

"5. If the jury find the line to be situated at any place other than the two lines alluded to in the next two foregoing charges then the jury will so state and will indicate where they so find the line, and if the line so found places any part of the lots claimed by defendants in lot 5 then the jury will describe how much and will find any so included for the plaintiff."

The jury returned a verdict for plaintiffs. Judgment was rendered for the plaintiffs for the strip of land two hundred and two feet in width, described in the charge. Motion for new trial overruled. Defendants appealed.

*Osceola Archer* and *Carleton & Morris*, for appellants: 1. The description of the land was insufficient. (Rev. Stats., art. 4786, sub. div. 2.)

2. The certificate from the Comptroller's office was improperly admitted. There was no authority of law for that officer to keep such a record. (1 Greenleaf on Evidence, secs. 50, 51, and 82.)

3. The evidence to the division line and fence should have been excluded. Fisher, Holdstock and Shelden bought from Mrs. Burlage when she was in actual possession, and they had no notice of any boundary such as that testified to. (Houston v. Sneed, 15 Texas, 309, 310.)

The court can not look to the evidence on which the verdict was found to determine what judgment to render, but the judgment must be based on the pleadings and verdict; for facts not put in issue by the pleadings can not be proven, and if proven can not form the basis of a judgment. (Hall & Jones v. Jackson, 3, Texas, 310; Chrisman v. Miller, 15 Texas, 160; Smith v. Tucker, 25 Texas, 603 and 604; Mays v. Lewis, 4 Texas, 38; Adams & Wicks v. Cook, 55 Texas, 165; Throckmorton v. Davenport, 55 Texas, 236; Denison v. League, 16 Texas, 408; Wallace & Co. v. Bogel & Bro., 62 Texas, 638; Aiken v. Jefferson, Texas Court Reporter, vol. 1, p. 499; Burnet v. Burriss, 39 Texas, 504.)

Opinion of the court.

*Rector, Moore & Thomson,* for appellee: The line of division between lots four and five, division E, adopted and agreed on, first, between John and Joseph Hampton and afterwards between John C. Hampton and Mrs. Mary A. Hawkins, now Mrs. Mary A. Smith, was binding on defendants. (Browning v. Atkinson, 46 Texas, 606; Floyd v. Rice, 28 Texas, 341; George v. Thomas, 16 Texas, 74, 75; Houston v. Sneed, 15 Texas, 309.)

MALTBIE, JUDGE. The question in this case is as to the boundary of out lots four and five, division E, of the city of Austin. The lots have a common boundary. Appellants own lot four and appellees own lot five. There are no field notes to these lots. They were first sold by the Comptroller, acting for the State of Texas, according to a map which he had and exhibited at the sale in 1851. This map was a copy of a map made in 1840, which is now in the land office, but is obliterated to such an extent that the boundary of these lots can not be ascertained from it. There is a map in the land office which purports to be a copy of the old map of 1840, which is in use in that office, and which the officials recognize as correct, but it seems that no one has tested its accuracy by a comparison with the map of 1840. The map used by the Comptroller is missing. The land office maps and two private maps, one of which was in use by the city officials of Austin, were evidence in this case.

The land sued for was described in plaintiff's petition as being in the city of Austin, county of Travis, and State of Texas, and as being "all of lot number five in division E in the government tract adjoining the city of Austin, and patented to Hutson Aiken, assignee of Sebron G. Sneed, on the seventh day of July, 1851, patent number one hundred and ninety-three, volume two, as will more fully appear by reference to the plan of said tract on file in the general land office of Texas." There was no further description. The defendants, Fisher, Holdstock and Sheldon, specially excepted to this description of the property sued for, because it did not sufficiently identify the same, so that the possession thereof could be delivered to the successful party in this suit. The court overruled this exception, and defendants took their bill of exceptions. It does not appear from this pleading that the land can not be identified from the description given, and for this reason there was no error in overruling the exception.

Nor was there error in admitting in evidence the certificate of the Comptroller, showing, among other things, that lot No. 4 contained six and a quarter acres and lot No. 5 seven acres, according to report of sale made by the Comptroller, over objection that there was no authority in law for the comptroller to keep such a record, and that the patent was the best evidence of such boundary. It. was the duty of the Comptroller to cause the tract of land, embracing the lots in question, which at that time belonged to the State of Texas, to be laid off in lots of convenient size, and to sell the same at his office, and to pay the money arising therefrom into the State treasury. (Act of 1850, pp. 8 and 9.)

This act does not require an account of the sale to be kept; but the act of April 11, 1846, Paschal's Digest, 926, article 5416, does require the Comptroller to keep and state all accounts in which the State may be interested. The boundary of these lots being in dispute their area was a circumstance for the consideration of the jury, and the lots having no field notes the area, it would seem, could not be ascertained from the patent, and could only be shown from the Comptroller's report of the sale.

It is insisted that the court erred in charging the jury that the defendants would be bound by any agreed boundary line that the former owners of lots 4 and 5 may have made, because Francis T. Burlage was in possession of the land in controversy at the time she sold to defendant Fisher and others, and appeared to be the owner; and the evidence in this case does not show that defendants had any notice of an agreed line between any previous owners of lots 4 and 5, if any was ever made. There is no question but that the charge given is, as a general rule, correct, and that it was applicable to all the defendants in this suit, except the defendant Fisher, who seeks to escape from its operation on the ground that he is an innocent purchaser without notice. The only fault of this part of the charge, if there is any, is that the court failed to give all of the law applicable to this case. This is simply an omission. There was no request for any additional instructions, and the rule is firmly established that the Supreme Court will not reverse a case for a failure to charge all of the law applicable to it, when the attention of the trial court is not called to the omission.

There was a conflict in the evidence as to the width of the

strip of land in controversy, the witnesses placing it all the way from one hundred and sixty to two hundred and ten feet. The pleading only described lot 5, which had no field notes, and the jury found a general verdict for the plaintiffs, upon which the court rendered a judgment describing lot 5 by metes and bounds, so as to include a strip two hundred and two feet in width as the land in controversy. The judgment must follow the verdict. In this case the verdict did not authorize a judgment for lot 5, which would leave the parties as they were before any suit was instituted. It would be the better practice in boundary line cases that the petition set out the land in dispute by metes and bounds; otherwise, it becomes necessary for the verdict to describe the land found by the jury.

For the error indicated, the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Opinion adopted June 5, 1888.

STAYTON,
*Chief Justice.*