## J. H. RANDALL ET AL. v. W. A. GILL ET AL.

### No. 6615.

1.   **Established Corner.**—A beginning corner called for upon a known line and a short distance from a well known corner should not be disregarded in an effort to construct a survey some of whose lines are not marked.

2.   **Identity of Survey from Known Corners.**—Where a survey is rectangular and the northwest and southeast corners are known and the courses of the lines are given, the area covered is demonstrable.

3.   **Opinion of Surveyors.**—It was erroneous to permit surveyors to testify to their opinions that when the original survey in litigation was made none but one of its lines was run.   The testimony should have been restricted to facts as they had found them upon the ground.   The jury should pass upon such facts.

4. **Charge.**—See charge regarded misleading in giving undue prominence to parts of the testimony.

5. **Surveyor's Report.**—In the order for survey the duty of the surveyor should be distinctly set forth. Objections to a surveyor's report can not be determined unless the order defining the duties of the surveyor be produced. If the report shows that the order was obeyed the objections should be overruled. See facts.

6. **Surveyor—Testimony of.**—Where the record shows that the surveyor whose report was attacked was examined as a witness and stated as such his work in making the survey, such testimony will be considered as supplementing his report and sustaining it.

APPEAL from Comanche. Tried below before Hon. T. H. Conner.

This suit involves title to a tract of land of 270 varas in width and lying north of the Hoxie and Stephens surveys. It is a location upon an alleged vacancy between said surveys on the south and the Bonham survey on the north.

The north line of the Hoxie and Stephens surveys is known; so the beginning or southeast corner of the Bonham, and also its northwest corner and its west line. Its southeast corner is on the Hoxie north line. Its south and north lines are parallel with said Hoxie north line, to which also the east and west lines are perpendicular. The other facts are sufficiently given in the opinion. The judgment below established the vacancy between the Bonham and the Hoxie surveys.

*Lindsey & Hutchison*, for appellants. — 1. Whether a survey was actually made on the ground, or whether all or any of the monuments or lines called for in a grant were actually marked and established on the ground, is not a matter about which any man can be an expert or can testify as an expert, but is a question of fact to be determined by the jury from all the evidence. It was error, then, to allow the surveyors testifying to state it as their opinion that none of the monuments or lines called for in the Bonham patent (except the west line and its termini) were actually made and established on the ground, and if error, material error that very probably misled the jury. Cooper v. The State, 23 Texas, 331; Todd v. Dysart, 23 Texas, 597, 598.

2. If it was proper at all to admit in proof the opinion of the witnesses Holman, Hill, and Tunnell, certainly the opinion should have gone in only upon an express limitation by the court to the jury, stated at the time, that the jury could consider such opinion in connection with the facts stated and the whole testimony, and that the jury would determine from all the evidence where the Bonham lines were, and whether this opinion was well based and supported by proof. This evidence was not so limited either at the time admitted nor afterwards by the charge.

3. The purpose of appointment by order of the court of a surveyor "to survey the land in controversy" is that the court and jury may see from the written report of the surveyor (where there is a conflict as to

boundary) where the lines and monuments and objects called for by the original surveyor are to be found on the ground, and whether any or all of said objects, etc., are found on the ground, and if so which, and the relative positions of the several objects found to each other, and their distances from each other—that is, the written report should state all the facts necessary to be known to the court and jury to enable them to legally fix and determine the true boundaries of the doubtful surveys as originally made by the locating surveyor. A report which does less should be rejected as evidence. The report objected to states how the appointed surveyor established the Bonham and Garlington surveys, but does not state such facts as would enable the court and jury to say, after applying the facts stated to the field notes in proof, that he had or had not legally and properly established said surveys. The admission of said report in evidence was therefore error. Rev. Stats., art. 4800; Stafford v. King, 30 Texas, 257; Ayres v. Phillips, 45 Texas, 601.

No brief for appellees.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by appellees to try the title to 160 acres of land.

The controversy is as to whether the land is included in the James B. Bonham survey. If it is, it is admitted that appellants, who were defendants in the District Court, have title to it. If it is not included in the Bonham survey, it is admitted that it is owned by appellees.

Appellees claim that the land sued for by them lies between the Bonham and the Stephens and Hoxey surveys, while appellants contend that the south line of the Bonham is the north line of the Stephens and Hoxey surveys.

It appears that all three of said surveys were made by the same surveyor, as was also the Bowers survey, and that the Hoxey survey was made on the 19th day of June, 1846, and the others on the 12th day of June, 1847.

The patent describes the Bonham survey as beginning 718 varas south 71 degrees east from the northwest corner of the Asa Hoxey survey for its southeast corner; thence north 19 degrees east 2192 varas to its northeast corner; thence north 71 degrees west 3800 varas to its northwest corner; thence south 19 degrees west 2198 varas to its southwest corner; and thence south 71 degrees east 3800 varas to the beginning.

The northwest corner of the Hoxey is the northeast corner of the Stephens, and the courses of the north lines of the two surveys are the same as the course of the south line of the Bonham.

The northwest corner of the Hoxey and the northwest corner of the Bonham are both well defined and easily identified.

For a considerable distance from the northwest corner of the Bonham

on the course given for its southwest corner the west line of said survey is plainly marked.    Neither the northeast nor southwest corners nor the north, south, or east lines of the Bonham are found marked on the ground as they should be found from the Hoxey corner as called for in the patent.

The evidence shows that by terminating the west line at the distance from the northwest corner called for in the patent, and from that point running the south, west [east], and north lines on the courses and for the distances called for in the patent, a marked southeast corner and marked south and east lines are found so as to close the Bonham survey with its proper quantity of land and not include any part of the land in controversy. But the marks of the corner and lines thus found are shown to be younger than the marks on the west line, and there is evidence showing that they were made subsequent to the date of the original survey.

The evidence shows that if the Bonham survey is made to begin at the point in the north line of the Hoxey called for in the patent, and the east line is prolonged on the course given in the patent 270 varas beyond the length of that line as called for in the patent, and if the northeast corner is established where such line will intersect the north line of the survey extended from the established northwest corner, and the west line is extended 270 varas beyond its distance given in the patent on the course given in the patent to where it will intersect as the southwest corner of the survey the south line extended from the southeast corner on the course given in the patent, such lines will include in the Bonham survey all of the land in controversy.

The north lines of the Hoxey or the Stephens surveys do not appear to be marked upon the ground, but, as we have said, the intersection of the northeast corner of the one with the northwest corner of the other is plainly marked and well defined, and there does not appear to be any uncertainty about where said surveys or their north lines are to be found.

The beginning or southeast corner of the Bonham, as called for in this line and at a given and short distance from a well known corner, should not be disregarded in the endeavor to ascertain the true situation of the survey.

The southeast and northwest corners of the survey being clearly ascertained, and the correctness of the course called for in the patent being demonstrated by its correspondence with the marked west line as well as with the north line of the Hoxey, and as course prevails over distance where the two can not be reconciled, the lines of the survey should be closed by the extension of lines from the northwest and southeast corners to their intersection.

The cause was tried before a jury, and surveyors, who were witnesses, were permitted to express their opinions to the effect that when the original survey was made none but the western line was actually run.    In this we think there was error.    It was not a fact to be proved by expert evi-

dence. The witnesses had surveyed the land and had described the facts as they found them to exist on the ground. That was as much as it was proper for them to be permitted to do. It was the province of the jury to conclude from the facts proved whether or not the lines were actually run.

It can not be doubted from the evidence that the surveyor actually ran the west line and actually found the northwest corner of the Bonham survey and the northwest corner of the Hoxey survey. There being no difficulty in finding the southeast corner of the Bonham survey from the last named point, and there being no uncertainty about the course of any of the lines, the actual lines of the survey may be ascertained with certainty from these facts, even if none of the other lines were ever actually surveyed.

It would be different if there was anything in the evidence to contradict or cast doubt upon the correctness of the two corners mentioned, but we find nothing.

The following charge of the court is assigned as error: "But should you further find that in fact and in truth the surveyor locating said Bonham survey was not actually at and did not actually begin and survey on the ground from the northwest corner of the Hoxey survey, but on the contrary began at some other point and actually on the ground established the northwest corner of the James Bonham and actually ran the west line and marked it, and when he arrived at the point where the course and distance as stated in the field notes calls for the southwest corner, that he then and there actually made and established the southwest corner of the Bonham at or near the point where the witness Holman says he found old roots and evidences of old trees where the bearing trees were called for by field notes; and should you further believe that after having so established the southwest corner of the Bonham survey, such surveyor did not actually run the line from such southwest corner as so established to the northwest corner of the Asa Hoxey survey, but simply called for such Hoxey corner, calculating course and distance, and that no other line or lines than the west line was actually run and marked, and no other corner or corners save the northwest and southwest corners of the Bonham survey were actually made and identified on the ground whereby a different result would be more satisfactory, then and in case you so find you are instructed that you will be at liberty to disregard the call for the northwest corner of the Asa Hoxey survey and give controlling effect to course and distance; and in such case if you believe that to follow course and distance as stated in the field notes will, after considering all the facts and circumstances in the case, lead to a conclusion more satisfactory and reliable, then and in such case you would complete the Bonham survey, and its true location would be found by going the distance and in the course in an easterly direction called for in the field notes, and thence north and west to the beginning or northwest corner of the James Bon-

ham survey. In case you so find, then no part of the Sarah Garlington survey will be included in the Bonham survey, and plaintiffs will be entitled to your verdict."

We think this charge gave undue prominence to some of the evidence and is inconsistent with what we have indicated to be in our opinion the rules of law applicable to the facts in issue.

A surveyor's report was filed and admitted in evidence over the objections of defendants. The objection to the report is that it relates what the surveyor did in running out and establishing lines of a survey containing the correct quantity of land, instead of showing what evidences or want of evidence he found of the footsteps of the surveyor when he made the survey described in the patent. Whether or not the report ought to have been stricken out depends on the order directing the survey to be made. That order should have directed the surveyor what he was to do, and if his report had then failed to show that he had followed such directions it should not have been received. The record before us does not contain the order of survey, and we are left to infer that the surveyor did what he was ordered to do.

We see no objection to his having been appointed among other things to ascertain the facts stated in his report, but in addition to that it was of primary importance that he should have been directed to go to the points mentioned in the patent and to run to and from all of them on the courses therein given, and to include in his report all that he found relating to the survey and having any tendency to show whether or not it was actually north from those points.

The surveyor who made the report also testified as a witness, and seems to have covered by his testimony what he had omitted from his report.

If other errors were committed on the trial we think they were the results of inadvertence, and as they are not likely to occur on another trial we deem it unnecessary to discuss them now.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered May 20, 1890.