**SOUTHERN PINE LUMBER CO. et al. v. WHITEMAN et al.**

No. 1636.

Court of Civil Appeals of Texas. Eastland.

March 5, 1937.

Rehearing Denied April 16, 1937.

Guinn & Guinn, of Rusk, Felix A. Raymer, of Houston, and R. E. Minton, of Lufkin, for appellants.

W. H. Shook, of Dallas, and Norman & Norman, of Rusk, for appellees.

FUNDERBURK, Justice.

This is a suit in trespass to try title brought by W. T. Whiteman and E. M. Decker against Southern Pine Lumber Company and Humble Oil & Refining Company, to recover a tract of land in Cherokee county patented to R. K. Gentry. The land was described in plaintiffs' petition the same as in the patent to said survey, "except" as alleged "that the call for distance of the east line of the Gentry Survey, running from the southeast corner thereof to the southeast corner of the N. Newton Survey No. 393, should call for an additional 57.6 varas, or 160 feet, or a total distance in feet of 2566 feet or 923.6 varas, which was the east line actually run on the ground and called for by the patent." The call in the patent thus referred to was "thence N. with said W. B. line [of the M. L. Harrison Survey No. 345] 866 varas to the S. E. corner of the N. Newton Survey No. 393."

The defendants filed a disclaimer of all the land except. that described as lying "south of the line which begins at a stake in the W. B. line of the lower M. S. Harrison Survey No. 345, about 304 vrs. south of said Harrison's N. W. corner, said point being 230 varas south of a branch running west which crosses said W. B. line near its N. W. corner, and said point is also about 10 varas south of the Alto-Palestine public road; thence West (or S. 89 W.) with an old marked line at 710 varas cross Spring branch at 1040 vrs. the W. B. line of the Winey Meredith Survey No. 297."

So far as deemed material to state, the defendants pleaded a general denial and not guilty. There was an additional plea of 10 years' limitation which described the land to which it applied as follows: "Beginning at the point in the W. B. line of the M. S. Harrison Lower Survey No. 345, claimed in plaintiffs' petition to be the N. E. corner of the R. K. Gentry Survey, which point is 50 varas south of a spring branch flowing W. across said Harrison W. B. line; thence W. 1040

varas; thence S. 174 varas; thence E. with an old marked line, claimed by defendant to be the Nichols Newton S. B. line 1040 varas to a stake about 10 varas S. of the Alto-Palestine public road, said stake being in the aforesaid Harrison W. B. line; thence N. with the said line 174 varas to the place of beginning."

A single issue was submitted to a jury as follows: "Do you find from a preponderance of the evidence that the true line between the R. K. Gentry Survey and the Nichols Newton Survey is as contended by the plaintiffs?" The answer was, "Yes." Upon this verdict judgment was rendered for the plaintiffs awarding recovery of said R. K. Gentry survey describing it with reference to the patent record and also by metes and bounds. In the description by metes and bounds, the east and north boundary lines were: "Thence N. 923.6 varas to S. E. corner of the N. Newton Survey, being 1630 vrs. S. of the N. E. corner of the N. Newton Survey No. 393, and being also 1630 vrs. S. of the N. W. corner of the M. S. Harrison Survey No. 345; thence W. with the S. B. line of said N. Newton Survey No. 393, 1064 vrs. to the E. B. line of the aforesaid Winey Meredith Survey, being also the S. W. corner of the N. Newton Survey, and being at a point 1819 vrs. S. of the N. W. corner of such survey, and being 1819 vrs. S. of the intersection of the E. line of the J. M. Box Survey with the N. line of the N. Newton Survey No. 393, which is also the S. B. line of the Levi Jordan League. * * *"

The defendants have appealed.

■ The record discloses that the only issue concerning the title of the plaintiffs to the entire R. K. Gentry survey as described in their pleadings was the location on the ground of the north boundary line— a common boundary line with the N. Newton survey, being the south boundary line of the latter. The suit is therefore a boundary suit. Aside from defendants' pleas of limitation which were abandoned as a basis of the court's judgment, it appears certain that the determination and location on the ground of the north boundary line of the Gentry survey, admittedly the south boundary line of the Newton survey, would have the effect of settling every matter in dispute between the parties. That, we think, is sufficient warrant for the statement that the suit as finally developed was simply one to

determine a disputed boundary line. Cox v. Finks, 91 Tex. 318, 43 S.W. 1; Schley v. Blum, 85 Tex. 551, 22 S.W. 667; Steward v. Coleman County, 95 Tex. 445, 67 S.W. 1016; Wright v. Bell, 94 Tex. 577, 63 S.W. 623.

It is contended that the court erred in rendering judgment based upon the verdict of the jury; that the verdict determined nothing, but left the case just where it began, with the result that the officer charged with putting the plaintiffs in possession must determine the boundary line between the Newton and Gentry surveys by running course and distance from disputed starting points not determined judicially by the decree.

■■ To the single issue submitted, the appellants objected, among other things, that "The court does not define where the plaintiffs contend the line between R. K. Gentry and Nichols Newton Surveys is located and the issue is therefore misleading and confusing." Also, "The answer of the jury to the issue as framed would be insufficient upon which to predicate a judgment." Since a judgment is required, among other things, to conform to "the verdict, if any" (R.S.1925, art. 2211, as amended by Acts 1931, c. 77, § 1 [Vernon's Ann.Civ.St. art. 2211]), it seems clear that the court should not render judgment on a verdict which does not determine the disputed issues in the case. As said before, there was but one issue submitted and in so far as the suit was only a boundary suit, as in its final development we think it was, there was but one issue in the case, namely, the location on the ground of the common boundary line between the Gentry and Newton surveys. There were many disputed facts in the case deemed by one or the other of the parties to be evidentiary upon the single issue, but it was not the duty of the court to determine by its judgment the truth or falsity of evidentiary facts. That was peculiarly the function of the jury, but only incidentally, as a means of determining their verdict. The law provides no procedure for recording a jury's findings of evidentiary facts and there is therefore no way of knowing such findings except as a matter of possible inference from the verdict.

The verdict of the jury in this case did not itself locate, nor furnish the means of locating, the disputed boundary line on the ground. This is apparent from the

fact that the issue in the form given only called for an answer as to whether such boundary line was "as contended by the plaintiffs," without stating the location on the ground which plaintiffs contended was the true line. Parenthetically, it may here be remarked, that, conceivably, the jury may have been of the opinion that the true line was as contended by the plaintiffs and yet have had no opinion of their own as to the actual location of the line. Where did plaintiffs contend the boundary line was located? Was it plaintiffs' contention that it was located with reference to definite described objects then on the ground and about which there could be no controversy? Or, with reference to old lines, corners, once existing objects, etc., the subject of possible dispute or uncertainty? How was it made known to the jury where plaintiffs contended the line was located—by their pleadings or their evidence or by both? Unless the answers to these, and perhaps other questions, could be found in the terms of the verdict itself, which manifestly they cannot, there is no way of knowing from the verdict where the jury intended to find the boundary line was located, nor does the verdict furnish any means of locating it on the ground.

It would perhaps be conceded that such a verdict would be no more effective support for a judgment settling the disputed boundary line than would be the case had there been a general verdict: We the jury find for the plaintiffs. Under the pleadings, we think such general verdict would have been insufficient. Plaintiffs' petition gave no other description of the disputed line than that contained in the patent of the Gentry survey. The only variance alleged was in an immaterial matter. It was alleged, in effect, that whereas the patent called for the east line to run north 866 varas, it should be 923.6 varas, but in any event it ran "to the southeast corner of the N. Newton Survey No. 393," there being no other description of said corner. Whether the length of the line was 866 varas or 923.6 varas, or more or less, was immaterial except as, in itself, inconclusive evidence of the location of the Newton southeast corner. Therefore, a general verdict for plaintiffs would have had no effect in settling the dispute as to the location of the boundary line. A judgment awarding a plaintiff recovery of a tract of land by the same description as his title papers

manifestly could have no effect in settling a dispute as to the actual location on the ground of one or more of the boundary lines. Hence, it is considered to be a settled proposition that in a trespass to try title suit wherein the only controversy concerns the location on the ground of a boundary line between plaintiff's land and the land of another adjoining his, it is necessary to describe the disputed line by reference to objects concerning which there can be no controversy and the verdict of the jury must evince their finding with reference to such objects. Jones v. Andrews, 72 Tex. 5, 17, 9 S.W. 170; Wilhelm v. Baumann, 63 Tex.Civ.App. 146, 133 S.W. 292; Whitmore v. McNally (Tex. Civ.App.) 39 S.W.(2d) 633, 635; Reed v. Cavett, 1 Tex.Civ.App. 154, 20 S.W. 837; Edwards v. Smith, 71 Tex. 156, 161, 9 S. W. 77; Carter v. Webb (Tex.Civ.App.) 239 S.W. 630; Provident Nat. Bank v. Webb, 60 Tex.Civ.App. 321, 128 S.W. 426; Converse v. Langshaw, 81 Tex. 275, 16 S.W. 1031; 8 T.L.R. 124.

The issue in the form submitted was far more subject to the objections made than if instead of saying "as contended by the plaintiffs" there was substituted "as alleged in plaintiffs' pleadings." That would at least have narrowed the field of speculation by the jury as to what were plaintiffs' contentions concerning the location of the line. But it may be regarded as well settled, we think, that in the submission of a special issue it is error to refer to the pleadings for information necessary to enable the jury to make a finding of the issue. Speers Law on Special Issues, p. 238, § 181, and authorities cited in the note.

The conclusion stated is further compelled, we think, by the operation of the principle that since the judgment of a court must conform to the verdict, if any, the judgment cannot include matters which are a part of the subject-matter upon which the verdict speaks but not embraced in the verdict. Carter v. Webb, supra; Battles v. Barnett (Tex.Civ.App.) 100 S. W. 817; Brient v. Bruce, 5 Tex.Civ.App. 580, 24 S.W. 35; Dillingham v. Smith, 30 Tex.Civ.App. 525, 70 S.W. 791.

The evidence in a case whether concerning a disputed or undisputed fact except undisputed facts relating to other issues than those embraced in the verdict, cannot be looked to in aid of the verdict to support a judgment. Brient v. Bruce, supra; Burnett v. Harrington, 58 Tex. 359; Mays v.

Lewis, 4 Tex. 38; Smith v. Tucker, 25 Tex. 594; Lindsley v. Sparks (Tex.Civ. App.) 40 S.W. 605; Bennett v. Seabright (Tex.Civ.App.) 32 S.W. 1048; Blakeley v. El Paso Bldg. & Loan Ass'n (Tex.Civ. App.) 26 S.W. 292; Permian Oil Co. v. Smith (Tex.Civ.App.) 47 S.W.(2d) 500; Government Hill Co. v. Munday (Tex.Civ. App.) 165 S.W. 78; Converse v. Langshaw, supra; Akin v. Jefferson, 65 Tex. 137.

Bennett v. Seabright, supra, is exactly in point against the contention of appellees that the pleadings of the defendant may be looked to in order to render the verdict definite. The issue as submitted referred the jury to plaintiffs' contention, and certainly not to defendants' interpretation of the plaintiffs' contentions.

It is not thought to be necessary to discuss all the other assignments of error. We shall notice only those which may reasonably be expected to have a bearing upon future proceedings in the case.

■ We overrule all assignments of error the alleged grounds of error wherein consist of actions or rulings of the court in refusing to give requested special issues or instructions or in overruling objections to the failure of the court to give same. In our opinion, the record shows no such requests were made for submitting special issues, or the action of the court upon such requests, as to support the assignments of error. It is our view as heretofore in other cases expressed that the action of the court in refusing a request for the submission of issues not submitted, nor attempted to be submitted, in order to be reviewable must be supported by a showing in the record that the issues were separately requested in form proper to be given so that any one could be given or refused without reference to the others and a record made of the action of the judge by indorsing "given" or "refused" thereon over his signature. Miller v. Fenner, Beane & Ungerleider (Tex.Civ.App.) 89 S.W.(2d) 506; Harris v. Thornton's Dept. Store (Tex.Civ. App.) 94 S.W.(2d) 849.

■ Although for the reasons stated we overrule, with others, appellants' fourth assignment of error presenting as a ground of error the action of the court in refusing to submit defendants' special issue No. 2, we deem it not improper to say that in our opinion the subject of the requested issue (the facts warranting) should have been embraced as a qualifying element in the submission of the single issue in the case. The requested issue was, "Where do you find from a preponderance of the evidence Absalom Gibson located on the ground the south boundary line of the Nichols Newton Survey, originally?" There was no issue we think as to where Gibson located the line as separate and distinct from the issue of the proper location of the line. If the evidence showed that Gibson located the line on the ground, or the facts warranted the presumption that he did, then the single issue involved should be so stated as to call for a finding of the line as so located by Gibson. A failure of the court to so state the issue would be reached by objection to the form of the issue and not by a request for the submission of a separate interrogatory or instruction. Miller v. Fenner, Beane & Ungerleider, supra; Harris v. Thornton's Dept. Store, supra.

■ Appellants' ninth assignment of error is, "The court erred in permitting the witness Smitherman to give his opinion that he had located and surveyed the Newton Survey according to accepted methods of surveying." This witness had testified to extensive work he had done in making a survey of the Newton tract, the purpose of which, of course, was to locate the south boundary line, that being a common line with the north boundary line of the Gentry, which was the one in dispute. We think a surveyor in detailing what he had done in making a survey could, when it involved a question of proper practice or customary method, testify that in his opinion the particular thing, course of action or conduct was "according to accepted methods of surveying."

The trouble with the opinion evidence complained of here is that the effect thereof amounted to an opinion of the witness that by the facts testified to he had correctly located the south boundary line of the Newton survey, or what was the same thing, had located the Newton survey. An opinion to that effect was precisely the same as an opinion that he had located the line in dispute. It was not permissible, we think, for the witness to reinforce his testimony concerning what he had done in the surveying operations by his opinion to the effect that thereby he had correctly located the disputed boundary line.

The issuable fact of the true location of the disputed boundary line was not one, we think, to be established, in whole or in

part, by opinion evidence for two different reasons:

(1) Resort to opinion evidence was not necessary. We have recently considered this point in Great A. & P. Tea Co. v. Walker, 104 S.W.(2d) 627, wherein we quoted from 19 Tex.Jur. p. 15, § 3, that, "When all the facts upon which opinion is founded can be ascertained and made intelligible to the court or jury, and there is no reason why the trier of facts cannot form the opinion as well as the witness after hearing the facts opinion is not competent." An affirmative statement of the conditions under which such evidence is admissible is that "the facts upon which the opinions are based cannot be presented to the triers of fact disconnected from the opinion in such manner as to enable them to pass upon the question with the requisite knowledge and judgment." 19 Tex.Jur. p. 27, § 10. If, as was held in Randall v. Gill, 77 Tex. 351, 14 S.W. 134, 135, a surveyor could not give his opinion to the effect that when a certain survey was made "none but the western line was actually run" because it was not a fact to be proved by expert evidence, it seems more certain to us that a surveyor could not give his opinion to the effect that he had in the way detailed by him correctly located the true boundary line in dispute, that being the very issue to be determined by the jury. In the last-mentioned case it was said that: "The witnesses had surveyed the land, and had described the facts as they found them to exist on the ground. That was as much as it was proper for them to be permitted to do. It was the province of the jury to conclude from the facts proved whether or not the lines were actually run." So, we think, it was the province of the jury in this case to determine the true location of the boundary line from the facts proved and not from the opinion of witnesses as to such location.

(2) But conceding that under some circumstances the very fact in issue may be proved by opinion evidence under the rules above stated, yet the opinion evidence here complained of involved the application of rules or principles of law. The court may and should submit the issue to the jury in such form as to call for only a fact finding. But an opinion based upon a six weeks' survey to the effect that a described line is the true boundary line involves questions of law and fact and is for that reason inadmissible. 19 Tex.Jur. p. 32, § 13; Id. p. 104, § 72.

As already said, we do not hold that a surveyor may not testify to a fact truly involving a question of practice or method of surveying and reinforce it by his opinion that same is according to accepted methods of surveying. Our view is that an opinion is inadmissible which, while referring to a matter of "accepted methods of surveying" is so comprehensive that it involves the application of rules and principles of law, or is the equivalent of an opinion upon the fact in issue, under circumstances which render such fact not provable by opinion evidence under the principles above stated. The opinion evidence here considered was, we think, of such character.

We think the evidence raised an issue of fact as to the proper location of the boundary in question and that therefore there was no error in the action of the court in overruling the appellants' motion or request for an instructed verdict in their favor. If we understand the record, the north line of the Gentry survey, wherever located on the ground, was the south line of the Newton survey. The south line of the Newton survey was described in the survey of that tract and in the patent issued upon the same with reference to bearing trees and objects on the ground. None of these were to be found at the date of the trial. Some of the evidence admitted to show the true location involved questions of the weight to be given the evidence and possibly the credibility of witnesses. An issue of fact, we think, was presented necessary to be submitted to the jury.

From the discussion, it follows that in our opinion the judgment should be reversed and the cause remanded, and it is accordingly so ordered.

### On Rehearing.

Appellants and appellees have filed motions for rehearing. Appellants insist that we should have rendered judgment in their favor by sustaining, as the basis for such action, their contention that the court below erred in refusing their request for a peremptory instruction.

Appellees insist that notwithstanding the insufficiency of the verdict to support the judgment, as held in our opinion, the undisputed evidence required a judgment in their favor, and for that reason the judgment should be affirmed.

The evidence relied upon by appellants as having conclusively established the boun-

dary line in dispute, in accordance with their contention, was that of J. T. Stevens and J. O. Booker. Stevens, eighty-five years of age and a lifetime resident of the community, testified in substance that he knew the location of the southwest and southeast corners of the Newton survey; that the southeast corner was about 10 feet south of the Alto-Palestine road; that in 1881 and in 1893 he saw the south boundary line of the Newton between said corners as marked on virgin timber; that in 1893 he acted as chain bearer in the survey of the Glenn tract which began at the southwest corner of the Newton. He further testified that the line marked on the virgin timber was generally reputed to be the boundary line between the Newton and Gentry surveys.

J. O. Booker, a surveyor in the employ of the Southern Pine Lumber Company, testified from his original notes that in 1912 he surveyed the Newton tract by running old lines marked on virgin timber, and that the marked southeast corner of the Newton survey was at a point 10 varas south of the Alto-Palestine road, which road all witnesses agreed had been practically unchanged for more than half a century.

The testimony of these witnesses tended to show that the disputed boundary line was located according to the contention of the defendants. In our opinion, therefore, controlling effect cannot properly be given to calls for course and distance, even if reckoned from undisputed beginnings. However, the beginning point was not undisputed, but was predicated upon the surveyors' conclusion as to the true location of the long disputed south boundary line of the Levi Jordan survey.

In Stafford v. King, 30 Tex. 257, 272, 94 Am.Dec. 304, it was said: "'A call for a natural object, as a river, a known stream, a spring, *or even a marked tree,* shall control both course and distance.' * * * When the surveyor points out to the owner rivers, lakes, creeks, *marked trees,* and lines on the land, for the lines and corners of his land, he has the right to rely upon them as the best evidence of his true boundaries, for they are not liable to change and the fluctuations of time, to accident or mistake, like calls for course and distance; and hence the rule, that when course and distance, or either of them, conflict with natural or *artificial* objects called for, they must yield to such objects, as being more certain and reliable." (Italics ours.)

But, suppose when a contest has arisen and the subject of dispute is submitted for decision, artificial objects which once marked the footsteps of the surveyor have ceased to exist but there are witnesses who can and do testify to their former location? Should course and distance, if in conflict, be made to yield to such evidence? We think the rule so requires. In Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317, the court said: "The lines as actually run and the corners as actually established when consistent with other locative calls fix the true boundaries of the survey. The locations of such corners may be proved by any admissible evidence sufficient to lead to a belief of the fact. * * * Where a stake is once placed, it fixes the corner as conclusively as if marked by natural objects. Owing to the fact that it may be removed or obliterated, its location may be more difficult of proof; but, if proved, it fixes the corner with the same certainty as where it is marked by a permanent object. * * * *If the place where it was originally located* can be established, *the call for distance should yield to it.*" (Italics ours.) This was in accord with what Judge Moore had previously said in Welder v. Carroll, 29 Tex. 317, 318: "If the boundary line between these surveys was run out and marked upon the ground, and it can be ascertained and established by a re-survey, following the calls in the title and map forming a part of it and the ancient landmarks made for its identity by the original surveyor; or, *if its locality can be proved by witnesses who can, from their personal knowledge, or on information derived from general reputation, or from its having been pointed out to them by the surveyor by whom it was run, or others who were present at the time or cognizant of the fact* (Stroud v. Springfield, Austin term, 1866, 28 Tex. 649) this will fix and mark its position, although there may be a discrepancy between its position thus ascertained and that given it by the calls or plat on the grant." (Italics ours.)

We would regard the testimony of the two witnesses above named as conclusive if uncontradicted. We have had some difficulty in satisfying our minds that the testimony of the witness Charles F. Holcomb presents a conflict. Our conclusion is that it probably does. Holcomb testified to the effect that some forty-five years previously he owned a part of the Gentry survey and at that time he knew the location of the northeast corner of the Gentry survey, and that it was north of the Alto-Pal-

estine road a distance of about 100, 150, or more, yards. He said the corner was marked by hacks and blazes on trees. As to how the marks identified a corner rather than a north-south line about which there was no controversy, his testimony was indefinite. In addition to testimony of his personal knowledge as to the location of the corner he further testified: "I had the Gentry tract and ran that line—ran the line that went up to that corner and *that was always said it was the corner of the Gentry tract.*

"Q. Who said that? A. Most everybody knew it.

"Q. Well, name them. A. Anybody out there.

"Q. Have you known them? A. Yes, sir.

"Q. Who were they? A. My daddy, I will say, and brother and two or three more that were interested in it."

We doubt if Holcomb's testimony against an attack challenging its sufficiency would have supported a judgment for the plaintiffs. It suggests the probability that had it been better tested it could have been shown to consist of conclusions or conjectures or hearsay, but it does not sufficiently so appear. From these considerations, we adhere to our former conclusion that the court did not err in refusing to instruct a verdict for the defendants.

The two surveyors, witnesses for the plaintiffs, made the fact clear that the correctness of their survey was dependent upon whether the northeast corner of the Newton survey had been located by Gibson, the original surveyor, in the south boundary line of the Levi Jordan, as located by said surveyors. Both witnesses admitted that the true location of the south boundary line of the Jordan had been in dispute for half a century or more and was called for in different places by the same surveyor, Gibson, within the period of three or four years, which included the time the Newton tract was surveyed. Both surveyors admitted that since the northeast corner of the Newton was by the field notes located, not only in the south boundary line of the Levi Jordan, but also at the northwest corner of the M. S. Harrison survey No. 342, and the latter survey by the description in its patent called for a number of natural objects, the true northwest corner of the Harrison could probably be located with reference to such natural objects. It was admitted that no effort to so locate the corner had been made, but on the contrary, as said before, the cor-

ner had been located solely with reference to its being in the supposed south boundary line of the Levi Jordan survey. Had there been undisputed evidence to show the true location on the ground of the northwest corner of said Harrison survey with reference to the natural objects called for and that, as contended by defendants, it was 174 varas south of the point which plaintiffs' surveyors established as the northeast corner of the Newton survey, we are of the opinion that such evidence, particularly when taken in connection with the testimony of the witnesses Stevens and Booker, would have required an instructed verdict for the defendants. The evidence, however, does not quite measure up to such specifications.

It is, therefore, our conclusion that both motions for rehearing should be and they are hereby overruled.