Opinion delivered June 9, 1888.

---

No. 6129.

JESSE TEAGUE *v.* THE STATE.

SELLING DISEASED MEAT—EVIDENCE.—To constitute the offense of selling diseased meat, the seller must have known at the time he sold it that the meat was diseased; and to warrant a conviction, the evidence must affirmatively establish such knowledge. See the statement of the case for evidence *held* insufficient to support a conviction for selling diseased meat.

APPEAL from the County Court of Brown. Tried below before the Hon. R. P. Conner, County Judge.

The conviction in this case was for selling diseased meat and the penalty imposed was a fine of twenty-five dollars.

Jesse Perry testified, for the State, in substance, that he hired

the defendant, about the first of December, 1887, to help him gather hogs, agreeing to give him one third of the animals gathered. Among the animals so gathered and placed in the witness's pen was a certain wild hog, which witness offered to defendant as toll. Defendant accepted the said hog upon condition that witness would keep it in his pen for a few days and feed it. A day or two after the said hog was placed in the pen with other hogs, it "got down," and witness and Camplain dragged it from that pen into another pen, and witness requested Ashcraft to notify the defendant of the condition of his hog,. and request him to come and get it. The animal would sometimes get up when urged, and eat, and at other times it would have to be helped up. When witness found the hog down in the pen, he had no reason to think that anything was the matter with it other than that it had been hurt by other hogs fight- ing it. He thought, though, that anybody familiar with hogs would know that the animal was not all right. Two or three days later he met defendant going to his pen, and was told by him that he could kill it, if he wanted to, at his, witness's, pen, and to get Jake Oliver to help him. When the witness got back home the hog was gone, and had not been killed at his pens. Witness did not know of any reason why the defendant should have supposed that the hog was diseased, or that it was suffer- ing from anything other than ill usage by the other hogs. The witness himself had no reason to think that the hog had any disease. He could not say that defendant knew anything about the hog lying about the pen before he took it off, nor could he say that anybody ignorant of that fact would have been able to detect anything wrong about the hog. When witness met the defendant en route to the pen to get the hog, defendant told him that he was. going to kill the hog and sell the meat to Thompson.

Mr. Camplain testified, for the State, that when he went to help Perry remove the hog described by Perry from the main pen to another, he seized it by one of its ears. The subsequent condition of his hand convinced witness that something serious was the matter with the hog, and that anybody as familiar with hogs as defendant was ought to have detected it. The stains on witness's hands indicated a deposit of screw worms in the hog's head, but it was too late for screw worms. Witness never saw the hog up and eating after it was moved from one pen to an other, but he did not see it all the time.

E. R. Ashcraft testified, for the State, that, a few days after the hog was penned at Perry's, he, as requested by Perry, went to defendant's house and told him that the hog was not doing well, and to come and get it. He did not tell defendant that the hog had been down, nor that it was sick, nor that it had been hurt by other hogs. He told no more than stated. Defendant replied that he supposed Perry had got tired feeding the animal. Witness had seen the hog helped up, and had seen it get up of its own accord and eat and drink.

. Elam Thompson testified, for the State, that about the first of December he bought the carcass of a hog from the defendant. Defendant brought the carcass to his house after night, the ears being cut off smooth with the head. Defendant said that he had cut the ears off because they had been torn by the dogs. When witness went to cut up the meat that night he detected a bad odor about it, but no sign of disease. The spare ribs and back bone were eaten at breakfast and dinner on the next day, but when the witness's wife went to cut up the shoulders in the evening she cut into a foul sore. Witness sent for defendant, who protested his ignorance of the condition of the hog, and agreed to, and afterward did, deliver to witness other meat in the place of the meat sold him.

The State closed.

Jake Oliver testified, for the defense, that he helped the defendant catch and put the hog on his wagon when it was taken off. The hog was standing up when witness and defendant reached the pen. It fought witness and defendant and was overpowered after a considerable struggle. Witness did not tell defendant that the other hogs had hurt it, nor that it had been down and had to be helped up.

Mr. McDaniel testified, for the defense, that he helped defendant kill the hog in question. He took the entrails out of the carcass and cleaned it, but observed nothing wrong about it except that the ears had been torn and smelt bad. Defendant asked witness what he should do about the foul ears. Witness replied: "Cut them off. Thompson knows you, and will not suspect you of stealing the hog if you tell him why you cut the ears off and from whom you got the hog." Defendant then cut the ears off and took the carcass to Thompson. There was nothing about the carcass to indicate that the hog was diseased.

John Hults testified, for the defense, that he went with defendant to take the hog in question to Thompson. On arriving

at Thompson's house defendant said to Thompson: "It looks bad to deliver a hog after dark with its ears cut off, but I got that hog from Perry and cut its ears off because they had been torn and smelt bad."

Mrs. Teague testified that she "rendered up" and used the lard taken from the hog sold by defendant to Thompson. If defendant discovered anything wrong about the hog, he neither rejected the lard nor required her to do so.

*Scott & Jenkins,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

Willson, Judge. This is a conviction under article 392 of the Penal Code for selling the flesh of a diseased hog. Conceding that the hog was diseased, the evidence fails to show that the defendant, at the time he sold the flesh of it, knew the fact, and unless he sold the flesh having knowledge that it was diseased he committed no offense.

Because the evidence does not support the conviction, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*