## No. 2533.

## Hipolito Sanchez v. The State.

1. Offering for Sale Adulterated Food—Information.—See the statement of the case for an information *held* sufficient to charge the offense of offering adulterated food for sale.

2. Same—Evidence—Fact Case.—To support a conviction for offering adulterated food for sale it devolves upon the State to prove not only that the accused offered such food for sale, but that. when he did so, he knew that the said food was adulterated. See the statement of the case for evidence *held* insufficient to support a conviction for offering adulterated food for sale.

Appeal from the County Court of Webb.  Tried below before the Hon. J. M. Rodriguez, County Judge.

A fine of five dollars was assessed against the appellant upon his conviction for offering adulterated food for sale, under an information which charged him as follows:  "In the name and by the authority of the State of Texas:  E. R. Tarver, county attorney of Webb county, State aforesaid, in behalf of the State of Texas, presents in the county court, at the August term, A. D. 1888, of said county, that Ypolito Sanchez, on or about the eighteenth day of August, A. D. 1888, in the county of Webb and State aforesaid, did then and there unlawfully and knowingly offer for sale an adulterated article of food, to wit, milk, against the peace and dignity of the State."

The case was tried by the judge without the intervention of a jury, and the facts proved are certified by the judge as follows:  "The following were the facts and all the facts proved, to wit:  The defendant is in the thirteenth year of his age.  At the time of his arrest, and for two years previous, he was a vendor of milk in Laredo, Texas.  He was arrested on the morning of the day named in the information, at the usual time of selling milk, with a can of milk.  The milk, when tested by the lactometer used by the city physician, marked sixty degrees.  The defendant, in the two years he had been selling milk for his mother, had performed his duties well, always making proper account for the milk he sold."

The lactometer used was the same kind as the one approved and adopted by the New York Board of Health. The "lacto-meter" is a glass tube, graduated with numbers running from one hundred and twenty degrees downward. When placed in the finest quality of milk, this tube floats so as to bring the number "120" to the surface of the milk. When placed in the poorest quality of milk, it will so float as to bring the number "100" to the surface. With Texas range cattle in poor condition, the lactometer will go something below one hundred degrees. The milk of goats running on the range near Laredo has marked, in one instance, as low as eighty degrees. The city physician of Laredo, Doctor Arthur, condemned milk in which the lactometer floated so as to bring the number of degrees on the instrument below seventy-five degrees—allowing twenty-five degrees for the difference in the manner of care between Texas and northern stock. The effect of pouring water into milk in which a lactometer is floating is to cause the instrument to sink deeper in the fluid. If placed in pure water, the lactometer will sink until the figure indicating one degree is on the surface. The defendant was found with the milk in question on the streets of Laredo, Webb county, Texas.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is for the offense denounced by the act of April 10, 1883 (Willson's Cr. Stats., sec. 656), the information charging that the defendant " did, unlawfully and knowingly, offer for sale an adulterated article of food, to wit, milk." A jury was waived and the cause was determined by the judge.

While the information does not follow the statute literally, and directly charge that the milk was known by the defendant to be adulterated, we think it substantially sufficient, and that the court did not err in overruling the exceptions made thereto.

To warrant a conviction of the defendant, however, it was essential for the prosecution to prove not only that the milk was adulterated, but that the defendant knew that fact. In the record before us we find no proof of such knowledge on the part of the defendant. Nor is there any evidence in the state-

ment of facts before us that the defendant offered to sell the milk.

As presented to us the evidence is manifestly insufficient to warrant the conviction, and the judgment is therefore reversed and the cause is remanded for another trial.

*Reversed and remanded.*

Opinion delivered January 12, 1889.