S. H. KRESS & CO. v. LINDSEY et al.

(Circuit Court of Appeals, Fifth Circuit. December 16, 1919.)

No. 3397.

1. ABATEMENT AND REVIVAL ⊂═ 53—SALES ⊂═ 255—NO PRIVITY OF WARRANTY BETWEEN SELLER OF INFECTED SHAVING BRUSH AND DEPENDENTS OF PURCHASER; NO SURVIVORSHIP OF WARRANTY TO PURCHASER'S DEPENDENTS.

Where, from use of shaving brush, purchaser became infected with a fatal disease, there was no such contractual privity between the seller of the brush and purchaser's widow and children, as to give the latter a right of action for breach of alleged warranty, nor any survivorship to them under any breach of warranty directly to the purchaser himself.

2. DEATH ⊂═ 46—COMPLAINT AGAINST DEALER FOR CUSTOMER'S DEATH FROM INFECTED SHAVING BRUSH MUST SHOW NEGLIGENCE.

To recover under the Mississippi death statute (Laws Miss. 1914, c. 214) for the death of a customer of a dealer selling a shaving brush containing anthrax germs, it must appear from the complaint that the dealer knew of the infection in the brush or was guilty of some negligence, and a complaint which merely alleges breach of warranty cannot be treated as one under the statute.

In Error to the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Action by Mrs. Emma McCarroll Lindsey and others against S. H. Kress & Co., begun in state court and removed to the federal court. There was a judgment for plaintiffs, and defendant brings error. Reversed.

---

⊂═ For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles Rosen, of New Orleans, La., Carl Marshall, of Bay St. Louis, Miss., and S. E. Travis, of Harrisburg, Miss., for plaintiff in error.

V. A. Griffith and William Lyon Wallace, both of Gulfport, Miss., and M. M. Boatner, of New Orleans, La., for defendants in error.

Before WALKER, Circuit Judge, and GRUBB and ERVIN, District Judges.

ERVIN, District Judge. This was a suit instituted in the circuit court of Forrest county, Miss., by appellees against appellant, and removed to the federal court for the Southern district of Mississippi.

The suit was based upon the breach of an alleged warranty contained in a catalogue issued by Kress & Co., who were doing a mail order business in New Orleans, La., which catalogue contained, among others, the following statements:

After stating that there would be an increase in the price of the articles shown by the catalogue over prices previously charged, the catalogue offered what it termed "an adequate supply of dependable bargains." It further stated:

"Any lowering of quality from the Kress high standard would not be in keeping with our recognized policy of quality first."

Again:

"This information for you. Our guaranty: We guarantee that the merchandise shown in this catalogue is exactly as illustrated. We also guarantee, when you purchase from us, that the merchandise sold you will represent full value and a saving to you; that it will give you the service and satisfaction you have a right to expect for the money paid. If for any reason you are not satisfied with any article purchased from us, return it to us at our expense, and we will either exchange it, if you wish, or return your money, together with any shipping charges you may have paid;"

And on page 70 of said catalogue it states as follows:

"Notions, merchandise of merit, at low prices. In buying these dependable notions from the pages," etc.

Among said notions on page 76, which is headed in large printed words "Brushes of Value at a Very Small Cost," is found advertised and offered a shaving brush, the same being illustrated, and under same is printed the number "D 8732," and name "Lather Brush," and at various and divers places throughout said catalogue the said goods therein are represented to be of "dependable quality," of "high quality," of "wonderful values," of "serviceable quality," of "quality standard." And:

"We make and keep customers by saving them money, giving them the best goods their money will buy, and protecting them with our binding guaranty of satisfaction or money returned."

The suit is brought by the widow and minor children of one C. H. Lindsey, who was a resident of Mississippi. The complaint shows that Kress' catalogue further suggested that, where several neighbors wished certain articles from Kress, they might save shipping costs by combining their orders into one; that one Maud Dale, who was a neigh-

bor of C. H. Lindsey, intending to order certain goods, communicated this intent to the wife of C. H. Lindsey; that C. H. Lindsey had previously informed his wife that he needed a shaving brush, and requested her to procure one for him; that his wife communicated this request to said Maud Dale, who, in making the order for her own goods, included the order for the shaving brush for said C. H. Lindsey.

It avers that defendant selected, sold, and delivered unto said C. H. Lindsey, contrary to the representations, guaranties and warranties aforesaid, a shaving brush charged with the bacilli of anthrax, and that, when C. H. Lindsey undertook to shave himself in using said brush, he accidently cut himself slightly with his razor, and by reason of the use of the brush became inoculated with the germs of anthrax, and died from the effects thereof. The plaintiffs conclude with the statement that the plaintiffs, the wife and minor children of said Lindsey, are by reason and in consequence of the aforesaid wrong of the said defendant bereft of the husband's and father's care, protection, and companionship, and are left without support, except by their own exertions. The damages claimed were $30,000.

There were no allegations of negligence on the part of Kress & Co., or that they were informed or had reason to believe that the brush sold and delivered by them to C. H. Lindsey was charged with anthrax germs, nor was it alleged that Kress & Co. were the makers of said brush, but the facts averred show that they were mere dealers, who were selling commodities manufactured by other parties.

[1] The defendant filed a general demurrer, under the practice of Mississippi, to this complaint, and now urges that the court below erred in that, while the suit is brought for breach of an alleged warranty, under a sale to C. H. Lindsey, that the plaintiffs, as the widow and children of said Lindsey, have no privity with the contract containing said alleged warranty, and hence no right of action. We think this assignment of error is correct, as there is no survivorship to the wife and children of Lindsey under a breach of warranty directly to Lindsey himself.

[2] It is manifest from the allegations of the complaint, and also from the rulings of the court below, that both plaintiffs' attorneys and the trial court confused the right of action alleged, namely, a breach of warranty in the sale made by Kress to C. H. Lindsey with the right of action conferred by the "Death by Wrongful Act" statute of Mississippi. The conclusion of the complaint, which we have copied, tends to show this fact, and so does the charge of the court, which begins on page 39 of the record. On page 40 of the record the court says to the jury:

"This is not a suit for negligence. It is not a suit for tort. This is a suit by the plaintiffs for the alleged breach of a warranty that is embraced in a mail order catalogue."

The court then quotes certain statements contained in the catalogue, and on page 46 of the record the court explains to the jury what are the proximate and natural consequences of an actionable default or

breach of warranty. He then charges the jury that, if they should find for the plaintiffs, they—

"may and should assess the damages at such sum as the jury might determine to be just, or as will amount to full indemnity, taking into consideration all the damages of every kind to the decedent, and all damages of every kind to each and every plaintiff, and while the law can only allow compensation. there are many elements and things to be considered in arriving at a final sum. You may consider the amount which Henderson Lindsey would probably have earned during his life, according to his life expectancy, and contributed to his wife and children, or in any wise bestowed upon them. You may in this connection consider his capacity and competency for earning money, what he was earning at the time of his death, and what he would probably have earned in the future, his age and expectancy, his health, his habits of life and living, his disposition to work and his own personal expenditures, and in these connections you should also consider the expectancy of life of his wife and children, the plaintiffs here. You may consider any loss of comfort, companionship, and society and protection of the husband and father, in the light of all the evidence relating to the character, habits,. and disposition of the husband and father towards his family, and the relations between them and him at the time of his death and prior thereto, the value of his service in the superintendence and attention to the care of his family, and in the education and training of his children; but you will allow nothing by way of solatium, or for their grief or distress over his sickness and death, as separated and distinguished from the elements already mentioned."

We have quoted enough from the court's charge to the jury to show that the court was submitting to the jury the damages provided for under the Mississippi "Wrongful Death Act," which is found in chapter 214 of the Laws of Mississippi Legislature of 1914, and which reads, so far as the matter at issue is concerned:

"*Actions for Injuries Producing Death.*—Whenever the death of any person shall be caused by any real wrongful or negligent act, or omission, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured, or damaged thereby to maintain an action and recover damages in respect thereof, and such deceased persons shall have left a widow or children or both, * * * the person or corporation, or both that would have been liable if death had not ensued, * * * shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall, in no case, affect the right of recovery. The action for such damages may be brought * * * by the widow, for the death of her husband, * * * or in the name of the child for the death of a parent, * * * or all parties interested may join in the suit. * * * In such action the * * * parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent, and all damages of every kind to any and all parties interested in the suit."

It is manifest, from the charge of the court and the verdict of the jury in this case, that the court submitted to the jury the damages provided for by this statute, and the jury ascertained the damages as provided for in the statute, though the action was on a breach of warranty alleged to have been made by Kress in the sale of a shaving brush to C. H. Lindsey. In this we think the court erred, for, the suit being based upon a breach of warranty made to C. H. Lindsey, there was not only no right of action in the widow and children of Lindsey, but the damages to be allowed and recovered are such damages as flowed from the breach of warranty, and not the damages as provided for

by the Mississippi "Death by Wrongful Act" statute. This act would have nothing to do with the measure of damages for a breach of warranty.

There being no such wrongful act or omission as is contemplated by this statute, and the action not being brought under the statute, but being founded on a breach of warranty, the next question is: What damages could have been recovered under the breach of warranty? This depends upon the question whether any special facts and circumstances were brought to the knowledge of the parties making and receiving the warranty, and what were the terms of the warranty. In other words, what damage did the parties to the contract, namely, Kress & Co. and C. H. Lindsey, contemplate and agree as the damages to flow from a breach by Kress of the alleged warranty.

It will be noticed that the statement in the catalogue is under the heading of:

"Our guaranty that the merchandise should be exactly as illustrated. We also guarantee, when you purchase from us, that the merchandise sold you will represent full value and a saving to you. It will give you the service and satisfaction you have a right to expect for the money."

Then follow these words, which are a part of the same statement:

"If for any reason you are not satisfied with any article purchased from us, return it to us at our expense, and we will either exchange it, if you wish, or return your money, together with any shipping charges you may have paid."

Again the catalogue states:

"We make and keep customers by saving them money, giving them the best goods their money will buy, and protecting them with our binding guaranty of satisfaction or money returned."

Now, it seems to us that the minds of these parties have met, so far as any alleged breach of warranty is concerned, on the proposition that, if the article purchased was not satisfactory to the purchaser for any reason, they have agreed that this article might be returned, and the seller will return the purchase price and pay any shipping charges which may have been paid by the buyer, so that any recovery for a breach of warranty, if there was a warranty contained in the statements made by Kress in his catalogue, was limited to this agreement on Kress' part, and the purchaser, therefore, or his personal representative, could not recover more than this sum. We therefore think the court erred in his charge as to the measure of recovery.

It is argued, however, by appellees, that this action is really in tort, and is based upon the breach of duty by defendant arising out of an alleged warranty contained in the catalogue. If this were so, in our opinion, the right of recovery and the measure of recovery would be fixed by the Mississippi statute we have quoted, as the use of the brush which is alleged to have inoculated C. H. Lindsey was in the state of Mississippi, and we think it was necessary, if the action were intended to be brought under this statute, that the complaint should contain some allegation of knowledge or notice on the part of Kress

& Co. that the brush contained anthrax germs, or some sufficient allegation of a negligent act or omission on the part of Kress & Co. which caused the injury to C. H. Lindsey.

Construing, therefore, the complaint according to this contention, the demurrers should be sustained. We, however, construe the complaint as being based upon the warranty alleged to have been made by Kress to C. H. Lindsey as the purchaser of the shaving' brush, and finding, as we do, no right of action in the plaintiffs, the case should be reversed.