## GREAT ATLANTIC & PACIFIC TEA CO. v. WALKER.

### No. 1631.

Court of Civil Appeals of Texas. Eastland.

Feb. 26, 1937.

Rehearing Denied April 2, 1937.

628

Russell & Russell, of Baird, and Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Kirby, King & Overshiner, of Abilene, for appellee.

FUNDERBURK, Justice.

By this suit Hoyt Walker seeks to recover against the Great Atlantic & Pacific Tea Company damages for injuries to himself in the sum of $1,350 and to his wife in the sum of $1,250 as the alleged result of ptomaine poisoning from eating of the contents of a can of corn purchased from the defendant's grocery store in Baird, Tex. Plaintiff's petition predicated his claim of defendant's liability on two grounds; implied warranty and negligence.

Upon the trial, after the court had overruled a motion by defendant for an instructed verdict, the case was submitted to a jury upon special issues, by whose special verdict it was found: (1) That the defendant sold the can of corn; (2) that plaintiff purchased it; (3) that said can of corn was unwholesome and unfit for human consumption; (4) that the defendant failed to use ordinary care to avoid putting the can of corn on the market; (5) that the plaintiff consumed as food some of the corn in question; (6) that plaintiff became ill a short time after eating said corn; (7) that the eating of said corn was a proximate cause of the plaintiff's illness; (8) that plaintiff's wife Isa May Walker consumed some of said corn; (9) that she became ill a short time after eating it; (10) that the eating of said corn was the proximate cause of the illness sustained by the plaintiff's wife; (11) that the illness of plaintiff and his wife was not caused by any other food; (12) that the plaintiff was proximately damaged as a result of eating said corn in the sum of $250; and (13) that his wife was proximately damaged in the sum of $350 as a result of eating the corn.

From the judgment for $600 rendered for plaintiff, in accordance with said verdict, the defendent has appealed.

Plaintiff and his wife and certain guests became violently ill after eating a Sunday dinner which consisted in part of the contents of the alleged bad can of corn. Three physicians were called to treat different ones of those who had partaken of the same meal. Over objections that it was hearsay, the several physicians were permitted to testify what their several patients told them as to the foods and drinks they and the others on the same occasion had and had not eaten and drunk. The question of the admissibility of such evidence is presented by a number of assignments of error and propositions. Our conclusions upon other questions presented will result in such a disposition of the case as to render a decision of this particular question of no special practical importance to any of the parties hereto. For that reason, in view of the difficulty and general importance of a correct decision of such question, we feel warranted in pretermitting a discussion and decision of it now.

Upon the next and closely allied question we will express our views. That question is whether the opinions of said physicians to the effect that the illness of their patients was caused from eating the contents of the can of corn, based, as they were, upon what such physicians were told by their patients several hours afterwards as to which of the foods and drinks they and the others had, and had not, partaken, were admissible in evidence as against the objection that the basis of such opinions was hearsay. The physicians were in agreement in the opinion that all of the persons who became ill in the afternoon following the particular Sunday dinner had ptomaine poisoning. The undisputed evidence shows, we think, that the opinion testified to by the doctors to the effect that such poisoning resulted from eating the corn rather than some other food or drink resulted solely from

a process of reasoning wholly dependent upon the truth of what they were told about who did and who did not partake of the several articles of food and drink. Under such circumstances, we think that the issue of fact, to which such opinions were relevant, was not one to which resort to opinion evidence was necessary.

The general rule is that opinions are not admissible as evidence. When properly admissible, it is by virtue of an exception to the general rule, based upon necessity.

"On matters of science, skill or trade it is settled law that persons having a knowledge of the subject matter may give their opinions in evidence *where the facts upon which the opinions are based cannot be presented to the triers of facts* disconnected from the opinion *in such manner as to enable them to pass upon the question with the requisite knowledge and judgment.*

"Expert testimony, therefore, is admitted upon the theory that the witnesses are supposed from their experience or study to have, upon the subject of inquiry, peculiar knowledge which jurors generally have not, and are thus supposed to be more capable of correctly drawing conclusions from facts and of basing opinions thereon than jurors generally are presumed to be." (Italics ours.) 19 Tex. Jur. § 10, p. 27.

Under the principle thus stated, can it be said that, based upon the true facts as to which of the several members of the dinner party, who became ill, did and did not eat and drink certain of the articles of food and drink, the physicians' opinions as to which particular food or drink contained the poison was presumptively any better than the opinion of the jury? We think the jury should have been permitted to form their own opinion from the facts admitted in evidence uninfluenced by the opinion of the physicians based, not upon facts in evidence, but upon ex parte hearsay statements. The statements made to the physicians and which constitute the basis of their opinions were not admissible under the rule of res gestae because they were made from three to five hours afterwards. Metropolitan Cas. Ins. Co. v. Woody (Tex.Civ.App.) 80 S.W.(2d) 771, and authorities cited. The subject-matter of the statements were not subjective symptoms admissible under the rule applying to such, since the statements had no relation to *symptoms* at all. It was wholly immaterial to the performance of any service of the physicians to their patients whether the ptomaine poisoning resulted from eating the corn, or from some other of the foods and drinks. Which particular food or drink contained the poison could in no manner have varied or affected the treatment.

In Jones on Evidence, § 349, it is said:

"The declarations of the party to his physician or to other persons as to the cause of the injury, or those charging liability upon other persons are not admissible when not made at the time of the injury. * * * The narration of past occurrences, for example, the manner in which a party has been injured, are no more competent when related by a physician, than when stated by a nonprofessional witness."

The supposed facts from which the physicians drew their inferences, if facts, were entirely capable of being established before the jury. The rule is that, "In order for the inference to be admissible it is further necessary that all the facts cannot be fully placed before the jury. * * *" 22 C.J. p. 563, § 662; Metropolitan Life Ins. Co. v. Wagner, 50 Tex. Civ.App. 233, 109 S.W. 1120; Elliott v. Ferguson, 37 Tex.Civ.App. 40, 83 S.W. 56.

Had the subject-matter of the hearsay statements properly come within the scope of expert testimony, then, if the evidence warranted, their truth should have been assumed in hypothetical questions and the opinions elicited accordingly. But it is our view that there exists no legal presumption that the opinion of an expert witness arrived at solely by a process of reasoning upon definite facts is any better than the opinion of a jury based upon the same character of reasoning from the same facts. Under the record, we think the law applicable thereto is correctly stated as follows:

"In other words, when all the facts upon which opinion is founded can be ascertained and made intelligible to the court or jury, and there is no reason why the trier of facts cannot form the opinion as well as the witness after hearing the facts opinion is not competent evidence." 19 Tex.Jur. p. 15, § 3.

■ If the judgment is solely dependent upon a cause of action for common-law negligence having been proved, it cannot be sustained. The undisputed evidence shows that defendant was not the manufacturer, processor, or canner of the corn in question. The label on the can carried, expressly, notice that defendant was a distributor. The undisputed evidence showed that it was nothing more than a distributor. Unless there was a contract duty, there was a total absence of any evidence of a violated duty to the plaintiff in the act of selling the corn. There was no evidence of any want of the exercise of due care in any respect alleged.

■ Appellee contends that the judgment is sustainable upon statutory provisions as follows: R.S.1925, arts. 4471, 4472; Penal Code, arts. 707, 714, and 717. In our opinion, the allegations in plaintiff's pleadings are not reasonably susceptible to the interpretation that they were intended to allege a liability based upon such statutory provisions. The pleadings clearly show one claim of liability based upon implied warranty (a contract liability) and another claim of liability based upon common-law negligence (a tort liability). If it be conceded that said statutes may in such a case as this give rise to a liability which is neither upon implied warranty nor common-law negligence—a question we do not here determine—there was, in our opinion, not only no intention to allege that facts to show such liability, but also that there was in fact an absence of necessary averments to show same. No question of "misbranded" food is or could, upon the facts, be involved. There is no allegation that the food was "adulterated" and there was no allegation of facts from which such conclusion—having regard to the statutory definition—would necessarily follow. The civil statute (article 4472) adopts the statutory definitions in the Penal Code (Penal Code, art. 707). The Court of Criminal Appeals, the highest court of authority in the interpretation of criminal statutes, has, in effect, read into the statutory definition as an implication the element of knowledge on the part of the seller. Teague v. State, 25 Tex. App. 577, 8 S.W. 667; Sanchez v. State, 27 Tex.App. 14, 10 S.W. 756. It if can be said that such knowledge was alleged, it is certain there was no proof of it.

■ It seems to us there is another obstacle to an affirmance of the judgment on the ground stated. If there could have been asserted such a cause of action, it will be upon the theory that by violation of a statute there was negligence per se. Even in such case, it is necessary to allege and prove that the negligence was a proximate cause of the injury—usually an issue of fact to be determined by the jury. It was not found by the verdict of the jury that the *act of selling the corn* was a proximate cause of the injuries to plaintiff and wife. On the contrary, the jury found that "eating of the canned corn" by plaintiff and his wife was the proximate cause of their injuries. In other words, the finding of the jury was that acts of plaintiff and his wife—not acts or omissions of the defendant—were the proximate causes of the injuries and damages. Translating the verdict in this respect into terms of the definition of proximate cause given by the court, it appears the jury found that "eating of the canned corn" was a "cause which in natural and continuous sequence unbroken by any new and independent cause" produced "injury and without which the injury could not have occurred and from which it ought to have been foreseen or reasonably anticipated by a person in the exercise of ordinary care that the injury complained of or some similar one would result, naturally and probably in the light of attending circumstances." Taken at what is thus plainly said, the jury found facts completely exonerating the defendant from any liability for negligence. True, no objection was made to the manner of submitting these issues, but nevertheless they would be in such conflict with a finding by us—were we otherwise warranted in making same—that selling the corn was the proximate cause of the injury as to preclude any judgment for the plaintiff. There may coexist more than one proximate cause of an injury, but there can be no judgment for plaintiff when one of the proximate causes is his own act "without which the injury could not have occurred and from which it ought to have been foreseen or reasonably anticipated by a person in the exercise of ordinary care that the injury complained of or some similar one would result," etc.

For these reasons, we cannot adopt the suggestion that the judgment is sustainable because of the statutory provisions.

If, therefore, the judgment is to be sustained, it must be upon the theory that defendant by the sale of the can of corn to plaintiff under the circumstances of such sale impliedly warranted the fitness of its contents as food for human consumption. Upon this question there is a bewildering contrariety of decisions. For an interesting presentation and discussion of them, see the article of Prof. John Barker Waite in the Michigan Law Review, February 1936, vol. 34, p. 494. The simplest statement of a general rule is that the seller of merchandise, knowing that it is to be consumed by the purchaser as food, impliedly warrants that it is fit for such purpose. Such statement, we think, if intended to be sufficiently comprehensive to cover all cases, either omits or implies other necessary elements as will later appear.

When there is a warranty, express or implied, the rights and obligations existing because thereof are contract rights and obligations. "A warranty," said the Supreme Court in Jones v. George, 61 Tex. 345, 48 Am.Rep. 280, "is an express or implied statement of something which a party undertakes shall be part of a contract, and, though part of the contract, collateral to the express object of it." "A warranty," says the text of Corpus Juris, "is a statement or representation made by the seller of goods, contemporaneously with and as a part of, the contract of sale, although collateral to the express object of it, having reference to the character, quality or title of the goods and by which he promises or undertakes to insure that certain facts are, or shall be, as he then represents them.". 55 C.J. p. 652, § 667. Again, "A warranty is *implied* when the law derives it by implication or inference from the nature of the transaction or the relative situation or circumstances of the parties." (Italics ours.) Id.

In Kellogg Bridge Co. v. Hamilton, 110 U.S. 108, 3 S.Ct. 537, 542, 28 L.Ed. 86, Justice Harlan said: "According to the principles of decided cases, and upon clear grounds of justice, the fundamental inquiry must always be whether, under the circumstances of the particular case, the buyer had the *right to rely,* and *necessarily relied,* on the judgment of the seller and not upon his own. In ordinary sales the buyer has an opportunity of inspecting the article sold; and the seller not being the maker, and therefore having no special or technical knowledge of the mode in which it was made, the parties stand upon grounds of substantial equality. If there be in fact in the particular case any inequality, it is such that the law cannot or ought not to attempt to provide against; consequently, the buyer in such cases—the seller giving no express warranty and making no representations tending to mislead—is holden to have purchased entirely on his own judgment." It is upon the principle thus stated that the rule is declared that warranties are to be implied according to the "presumed intention of the parties." 55 C.J. p. 715, § 701. "Any words or conduct sufficient to show that the sale was made with the understanding that the purchaser should take the goods as they are will prevent a warranty from being implied." Id. Accordingly, " * * * there is no implication of warranty regarding matters as to which no human skill or foresight can afford knowledge." 55 C.J. p. 716, § 701. The proposition is supported as a rule of law by numerous authorities that "whether or not the seller is a manufacturer or producer an implied warranty of fitness for a particular purpose will arise if the goods are purchased for a particular purpose which is known to the seller, expressly or by implication, *and the buyer relies upon the skill and judgment of the seller to furnish such goods.*" (Italics ours.) 55 C.J. p. 751, § 719; Jones v. George, supra; Turner & Clayton v. Shackelford (Tex.Com. App.) 288 S.W. 815; Fulwiler v. Lawrence (Tex.Civ.App.) 7 S.W.(2d) 636; Norvell-Wilder Hardware Co. v. McCamey (Tex.Civ.App.) 290 S.W. 772; Detroit Automatic Scale Co. v. Smith Milling Co. (Tex.Civ.App.) 217 S.W. 198; Buffalo Pitts Co. v. Alderdice (Tex.Civ. App.) 177 S.W. 1044; A. S. Cameron Steam Pump Works v. Lubbock Light & Ice Co. (Tex.Civ.App.) 167 S.W. 256; Needham v. Dial, 4 Tex.Civ.App. 141, 23 S.W. 240 This, we think, is but another statement of the same general rule already mentioned with the said omitted or implied elements added.

Whether the proposition as last stated controls the question now under consideration is dependent upon whether the plaintiff, as buyer, should be held to have relied upon the "skill and judgment of the seller to furnish such goods." There was no express reliance. As to whether reliance is to be implied is a question which for answer again

we quote from Corpus Juris, as follows: "* * * the doctrine of implied warranty of fitness is said to rest upon the presumed superior knowledge of the seller and cannot prevail where such superiority of knowledge presumably does not exist." (Italics ours.) 55 C.J. § 720, p. 753.

When can it be said that superiority of knowledge on the part of the seller "presumably does not exist?" Logically, and in keeping, we think, with sound principles of justice, many courts of this country have come to recognize that where, as in the case of the sale of goods in sealed cans or packages, the seller cannot possibly have any knowledge of the unfitness, if any, of same for food, or none superior to the knowledge of the purchaser, there can exist no legal presumption that he has such knowledge. That being the very foundation on which the implication of a warranty, if any, must rest, there is in its absence no implied warranty. As well said in the note to Ward v. Great A. & P. Tea Co., 231 Mass. 90, 120 N.E. 225 (perhaps the leading case taking the contrary view), reported in 5 A.L.R. 242: "This rule [that is, the general rule of liability upon an implied warranty] proceeds upon the assumption that the seller has some means of knowledge, opportunities for inspection, or sources of information which are not shared by the purchaser, in consequence of which, when the seller knows the food was bought for consumption, he warrants as a matter of law that the goods are fit for that purpose. Applying this doctrine, it has been held that an exception to the general rule arises in the case of canned goods, the theory being that, when the reason for the rule falls, the rule itself falls. In other words, it cannot be presumed that, in the case of goods sold in sealed cans, the dealer who did not make or pack them has a greater knowledge of the wholesomeness of the contents than the purchaser."

This same subject is dealt with in the text of Ruling Case Law, as follows: "The early rules of law were formulated upon the theory that the provision dealer and the victualer, having an opportunity to observe and inspect the appearance and quality of the food products offered to the public, were accordingly charged with knowledge of their imperfections. But no knowledge of the original or present contents of a perfect appearing can or sealed package is possible in the practical use of such products. They cannot be chemically analyzed every time they are used. Accordingly, the reason for

the rule having ceased, a new rule should be applied to the sale and use of packed goods that will more nearly harmonize with what is rational and just. While there is authority to the contrary, it comports better with justice to hold that where a dealer sells to his customer an article in the original package in which it is put up by the manufacturer, and the customer knows as much about the article as the dealer, and buys it without any representation from the dealer or reliance upon his judgment, knowing that there has been no inspection of it by the dealer, there is no implied warranty, although the dealer knows that the customer buys it for food. No rule of law should imply a warranty of that which it is impossible for a defendant to know by the exercise of any skill, industry or investigation, however great." 11 R.C.L. p. 1124, § 29. Some of the more important cases supporting the text as quoted are: Scruggins v. Jones, 207 Ky. 636, 269 S.W. 743; Bigelow v. Maine Central Ry. Co., 110 Me. 105, 85 A. 396, 43 L.R.A.(N.S.) 627; Coca-Cola Bottling Co. v. Swilling, 186 Ark. 1149, 57 S.W.(2d) 1029; Woolworth Co. v. Wilson (C.C.A.) 74 F.(2d) 439, 98 A.L.R. 681; Julian v. Laubenberger, 16 Misc. 646, 38 N.Y.S. 1052; Great A. & P. Tea Co. v. Gwilliams, 189 Ark. 1037, 76 S.W.(2d) 65; Kroger Groc. Co. v. Lewelling, 165 Miss. 71, 145 So. 726; Aronowitz v. F. W. Woolworth Co., 134 Misc. 272, 236 N.Y.S. 133; Reynolds v. General Elec. Co. (C.C.A.) 141 F. 551; Gindraux v. Maurice Merc. Co. (Cal.App.) 36 P.(2d) 844; Hoyt v. Hainsworth Motor Co., 112 Wash. 440, 192 P. 918; Canavan v. City of Mechanicville, 229 N.Y. 473, 128 N.E. 882, 13 A.L.R. 1123; McMurray v. Vaughn's Seed Store, 117 Ohio St. 236, 157 N.E. 567, and authorities cited; Walters v. United Groc. Co., 51 Utah, 565, 172 P. 473, L.R.A.1918E, 519; Walden v. Wheeler, 153 Ky. 181, 154 S.W. 1088, 44 L.R.A.(N.S.) 597; Mazetti v. Armour & Co., 75 Wash. 622, 135 P. 633, 48 L.R.A. (N.S.) 213, Ann.Cas.1915C, 140.

Conceding as we do the general rule of implied warranty in the sale of goods to be used for a known purpose, but including by implication or adding thereto as an essential element a presumption that the seller has a superior means of knowledge to that of the purchaser, we think we are warranted in saying there is but one Texas case which may be thought to hold contrary to the conclusions we have reached. That is S. H. Kress & Co. v. Ferguson (Tex.Civ. App.) 60 S.W.(2d) 817. The opinion in

that case dealt largely with the proposition, with which we thoroughly agree, that there is no difference in principle, as regards the point under consideration, between selling food and serving food. There was no discussion of the proposition that if it be conceded that selling and serving food may alike carry an implied warranty of fitness, an essential basis of such implication in either case is actual or presumed superiority of knowledge on the part of the seller or server, absent which a warranty cannot be implied. We are not satisfied that that question was sufficiently considered and certainly determined in the Ferguson Case so as to warrant our regarding the question as foreclosed.

 The foregoing discussion warrants, we think, an interpretation of the law as applicable to the undisputed facts in this case somewhat as follows: One not the manufacturer, processor, canner, bottler, etc., of food in sealed containers who sells it for human consumption without knowledge or any means of knowledge that it is unfit for such purpose cannot be presumed to have knowledge of its unfitness or to have any superior knowledge thereof to that of the purchaser, and hence there is no sufficient basis upon which the law can imply a warranty of such fitness.

 In this connection it should be of benefit to consider another rule of principle declared in the authorities. Let us again quote from Corpus Juris, as follows: "But when the sale is by a dealer, if the provisions are selected by the buyer and the selection is not left to the judgment and skill of the dealer, the general rule of caveat emptor applies and the dealer is not liable, in the absence of knowledge by him that the provisions are unsound, if the provisions are not fit for food." 55 C.J. 765, § 733. The Supreme Court of the United States has said: "Where a known, described, and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described, and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." Seitz v. Brewers' Ref. Mach. Co., 141 U.S. 510, 12 S.Ct. 46, 48, 35 L.Ed. 837. What application, if any, have these rules or principles to the undisputed fact in this case that plaintiff selected the can of corn in question from defendant's stock and paid the price of same without there being any negotiations or conversations whatever concerning the transaction? Are we to conclude that a proper interpretation of the law denies a cause of action under the facts of this case, as stated, but gives a cause of action had the facts been that plaintiff asked a clerk in the store for a can of corn and the clerk had taken it from the shelf and handed it to him? We do not think that the principle undertaken to be stated in the foregoing quotations should be given an interpretation involving such finespun and unsubstantial distinctions. On the contrary, we think the principle so declared like those previously noticed presupposes a superior knowledge or means of knowledge on the part of the seller over the buyer, and when there is no such superior knowledge and no basis for a presumption that there is, the rules or principles as stated have no application.

 Since our decision is not necessarily final, but is subject to review by a superior court, we deem it our duty to say for the benefit of the parties at interest that if we should be mistaken in the view that there exists under the circumstances of this case no cause of action upon implied warranty we are of the opinion nevertheless that the judgment cannot be sustained as to the damages recovered for injuries to Mrs. Walker. Since a warranty is part of a contract, only the parties to the contract, as a general rule, can assert rights which exist only by virtue thereof. We again quote from Corpus Juris: "Recovery on a warranty has been withheld from one whose connection with the goods is that of wife of the purchaser; and from a dependent child of the purchaser, even though the purchaser at the time of the sale expressly specified that the property was to be used by such child; and from the agent of the purchaser, even though such agent is the person, through whom the purchaser entered into the contract of sale." 55 C.J. 665, § 679; Talley v. Beever & Hindes, 33 Tex.Civ.App. 675, 78 S.W. 23; Kress & Co. v. Lindsey (C.C.A.) 262 F. 331, 13 A.L.R. 1170; Gearing v. Berkson, 223 Mass. 257, 111 N.E. 785, L.R.A.1916D, 1006; Smith v. Hanson, 228 App.Div. 634, 238 N.Y.S. 86; State v. Consolidated Gas, etc., Co., 146 Md. 390, 126 A. 105, 42 A.L.R. 1237. The cause of action for damages suffered by the wife is that of the wife and not the husband. If, therefore, the husband be held entitled to recover upon an implied warranty upon his own cause of action, he could not so recover for damages to the wife, there being no privity of contract.

It is, therefore, our opinion that the trial court erred in refusing to instruct a verdict for the defendant by reason of which error the judgment of the trial court should be reversed and judgment here rendered for defendant, which is accordingly so ordered.