## BOWMAN BISCUIT CO. OF TEXAS v. HINES.

### No. 14314.

Court of Civil Appeals of Texas.
Dallas.
May 11, 1951.

Rehearing Denied June 8, 1951.

468

Leachman, Matthews & Gardere, and Henry D. Akin, all of Dallas, for appellant.

Justice, Moore & Justice, of Athens, for appellee.

CRAMER, Justice.

This is an appeal from an order overruling a plea of privilege. Appellee's wife purchased from appellant's codefendant in the trial court, Sprowl & Armstrong Grocery and Market, located in Sherman, Texas, in the original sealed cellophane bag, a package of "Apricot Puff" cookies which appellee alleged were manufactured, packaged, sealed, and sold by appellant to its codefendant, the local retail store; that said package of cookies had therein a cooky which contained a thin metal wire which, when eaten by him, caused him severe personal injuries, both when he swallowed it, while it was passing through him, and when being excreted by him. His action was based upon an implied warranty by both the local grocery and the appellant to the effect that the contents of the sealed package were fit for human consumption and free from deleterious substance. Appellee controverted appellant's plea of privilege, setting up that appellant was a private corporation, and that this suit was filed in the county in which the cause of action, or a part thereof, arose, within the meaning of exception 23, Art. 1995, Vernon's Ann.Civ.St. The evidence disclosed that the original sealed package of "Apricot Puff" cookies was purchased by appellee's wife from the local grocery and that one of the cookies therein, when eaten by appellee at his home, had a wire therein which caused the injury complained of. Upon hearing, however, the evidence, admitted without objection, was that the package of cookies was not manufactured by appellant, but that appellant was the middle man, or wholesaler, who had purchased the cookies from the manufacturer and had sold them to the local grocer.

The plea of privilege was overruled, appellant excepted and has perfected this appeal, assigning four points of error, in substance: (1) Since it neither manufactured, packaged, nor sold the package of cookies, but was only a jobber or middle man, it was not liable to appellee, and, also, appellee having failed to prove the cause of action alleged, its plea of privilege should have been sustained; (2) where the proof showed that appellant sold one dozen packages of apricot puff cookies to the local grocery in Grayson County about eleven days prior to the sale thereof to appellee's wife, and that it neither manufactured, packaged, nor sold the same, and where there was no evidence that there was a label or writing on the package or that the cookies eaten were from the same packages sold by appellant to the local grocery, or that the retailer did not purchase the cookies from some one other than appellant, or that the cookies were in the same condition when eaten as when delivered to the local grocery, and there was no evidence that the wire was not placed in the cookies after they left the hands of appellant, the appellee wholly failed to prove a cause of action against appellant; (3) where the evidence showed appellant was a re-seller or middle man, and as such sold one dozen packages of cookies to the retailer who sold the same to appellee's wife eleven days thereafter, and which were then consumed by appellee, and there being no evidence that the sale was made in Grayson County or that the cookies were delivered by appellant to the retailer in Grayson County, there was error in overruling its plea of privilege; and (4) that the liability imposed upon a manufacturer and retailer for injuries resulting from the sale of impure food products on the theory of implied warranty based on public policy, is not applicable to a re-seller such as appellant.

We will discuss points 1 and 4 together, since both raise the single question of liability on an implied warranty by the wholesaler, as distinguished from the liability of the manufacturer and retailer on

an implied warranty. In Houk v. Berg, Tex.Civ.App., 105 S.W. 1176, where the plaintiff sued a retailer, the San Antonio Court of Civil Appeals held that the retailer could not recover over against the wholesaler; citing Needham v. Dial, 4 Tex.Civ.App. 141, 23 S.W. 240. These two cases are cited in Four States Grocery Co. v. Gray, Tex.Civ.App., 97 S.W.2d 355, 359. In the last case, Judge Speer stated: "The rule seems to be that, where a wholesaler sells goods to a dealer for resale, there is no implied warranty of fitness for use. * * * This is especially true if the dealer sells the merchandise in the unbroken packages such as received by him from the wholesaler. * * *" The only holding to the contrary of the above cases is dicta by our Supreme Court in the case of Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170, 171. In that case, opinion by Judge Martin, Commissioner, adopted by the Supreme Court, the Court quoted with approval from a Missouri case as follows: "Under common law principles there is an implied warranty as between the retail dealer and the consuming purchaser in the sale of food, including a warranty of freedom from foreign substances which may be injurious to the latter. Apparently all of the authorities agree that there should be no exception in the case of the sale of food in cans or sealed packages, unless the ends of justice would be better served by making one. We are doubtful if such ends would be better served by denying the liability of the retail dealer. There is no doubt but that the retail dealer is in a better position to know and ascertain the reliability and responsibilty of the manufacturer of the article, which he is handling, than the purchaser from him. To adhere to the general rule places the responsibility upon the party to the contract best able to protect himself and to recoup himself in case of loss, because he knows, or comes in contact with the manufacturer or wholesaler, as the case may be, from whom he purchased the article and who, undoubtedly, would be responsible over to him, upon a proper showing, on the theory of breach of implied warranty of fitness."

The Walker case is cited in Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, at page 839, 142 A.L.R. 1424, by our Supreme Court, in which opinion, authored by Chief Justice Alexander, it was held that the retailer was liable under an implied warranty imposed as a matter of public policy, even though the food was in sealed containers bearing the label of the manufacturer, and the retailer has no means of knowing that the contents are unfit for human consumption. On the same day that the Griggs Canning Co. case was decided, our Supreme Court, in Jacob E. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, held that a non-negligent manufacturer who processes and sells contaminated food to a retailer for resale for human consumption is liable to the consumer for injuries sustained by him as a result of eating the contaminated food under an implied warranty imposed by operation of law as a matter of public policy.

We do not find where our Supreme Court has passed directly on the liability of a middle man, or wholesaler, who buys from the manufacturer and sells to the retailer.

■■■ In view of the holdings by the Supreme Court above cited, we have examined the three Court of Civil Appeals cases, Houk v. Berg, supra, and the two cases cited therein, and are of the opinion that, in view of the reasons given by the Supreme Court in the later cases above cited, holding the manufacturer and retailer liable on the theory of an implied warranty based on public policy without regard to negligence, the same reasoning should be applied, and that the consumer, on that theory, would have a cause of action against the middle man in addition to his cause of action against the manufacturer and the retailer; and the cause of action against the middle man is not limited to an action over by the retailer. He (the middle man), as did the retailer, knew the food was to be resold for human consumption, and it would be inconsistent, in view of the late Supreme Court cases and the reasoning therein, to apply a different test to the middle man than that applied to the manufacturer and retailer. We therefore

hold that the wholesaler, or middle man, as well as the manufacturer and retailer, who sells unwholesome food for ultimate human consumption, is liable to the ultimate consumer for his injuries directly caused thereby, under an implied warranty imposed by law as a matter of public policy even though the food is in sealed original packages and he has no means of knowing that the contents are fit for human consumption. Points 1 and 4 are overruled.

Points 2 and 3 must also be overruled. In appellant's request for admissions under Rule 169, Texas Rules of Civil Procedure, as shown by statement of facts, page 3, there was the following request: "6. The 'Apricot Puff' cookies referred to above were delivered to Sprowl & Armstrong Grocery and Market, at Sherman, Grayson County, Texas, on or immediately before the 5th day of October, 1948, in unbroken packages." And the following answer thereto: "6. As to request No. 6, delivery date of such 'Apricot Puff' cookies to Sprowl & Armstrong Grocery and Market, Sherman, Texas, was September 24, 1948."

 As shown above, part of the request was admitted specifically. There was no denial, however, of the balance, and no showing that the unanswered part could neither be admitted or denied. Under such circumstances the entire question was taken as admitted and as answered in the affirmative. Rule 169, V.T.R.C.P.; Associates Investment Co. v. Baker, Tex.Civ.App., 221 S.W.2d 363.

The evidence also shows that appellant's codefendant, the retail grocer who purchased the cookies from appellant and sold them in unbroken, sealed, original package to appellee, resided in Grayson County and was available, but not called, as a witness. Under such record it is presumed that the trial court found the cookies eaten by appellee were the same cookies delivered by appellant to the retail store eleven days before, and not purchased by the dealer from some one else. The evidence also warrants the finding that the wire was not placed in the cookies after they left the hands of appellant. The evidence is undisputed that they were in the original unbroken package. Appellee's wife testified directly that the package of cookies was unbroken when she bought the cookies; still unbroken when she started to serve them, and it was at that time that she broke the package open. She also testified that they were "Apricot Puff" cookies. The cookies were eaten in Grayson County and appellee's cause of action arose in Grayson County.

Finding no error in the judgment, it is Affirmed.